FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHRISTOPHER M. SULYMA, and all others similarly situated,<br>    *Plaintiff-Appellant*,<br><br>v.<br><br>INTEL CORPORATION INVESTMENT POLICY COMMITTEE; FINANCE COMMITTEE OF THE INTEL CORPORATION BOARD OF DIRECTORS; INTEL RETIREMENT PLANS ADMINISTRATIVE COMMITTEE; CHARLENE BARSHEFSKY; FRANK D. YEARY; JAMES D. PLUMMER; REED E. HUNDT; SUSAN L. DECKER; JOHN J. DONAHOE; DAVID S. POTTRUCK; RAVI JACOB; INTEL 401(K) SAVINGS PLAN; INTEL RETIREMENT CONTRIBUTION PLAN,<br>    *Defendants-Appellees*. | No. 17-15864<br><br>D.C. No.<br>5:15-cv-04977-NC<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Nathanael M. Cousins, Magistrate Judge, Presiding

Argued and Submitted October 18, 2018
San Francisco, California

Filed November 28, 2018

Before: J. Clifford Wallace and Susan P. Graber, Circuit Judges, and Robert S. Lasnik,[*] District Judge.

Opinion by Judge Wallace

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel reversed the district court's grant of summary judgment in favor of the defendants in an ERISA action on the ground that the limitations period had expired.

A former employee and participant in Intel's retirement plans sued the company for allegedly investing retirement funds in violation of ERISA section 1104. The district court concluded that the employee had the requisite "actual knowledge" to trigger ERISA's three-year limitations period, 29 U.S.C. § 1113(2).

The panel held that a two-step process is followed in determining whether a claim is barred by section 1113(2). First, the court isolates and defines the underlying violation on which the plaintiff's claim is founded. Second, the court inquires whether the plaintiff had "actual knowledge" of the alleged breach or violation. The panel held that actual

---

[*] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

knowledge does not mean that a plaintiff had knowledge that the underlying action violated ERISA, nor does it merely mean that a plaintiff had knowledge that the underlying action occurred.  Rather, the defendant must show that the plaintiff was actually aware of the nature of the alleged breach more than three years before the plaintiff's action was filed.  In an ERISA section 1104 case, the plaintiff must have been aware that the defendant had acted and that those acts were imprudent.  Disagreeing with the Sixth Circuit, the panel held that the plaintiff must have actual knowledge, rather than constructive knowledge.

The panel concluded that disputes of material fact as to the plaintiff's actual knowledge precluded summary judgment, and remanded the case to the district court for further proceedings.

## COUNSEL

Matthew W.H. Wessler (argued), Jonathan E. Taylor, and Rachel Bloomekatz, Gupta Wessler PLLC, Washington, D.C.; Joseph A. Creitz, Creitz & Serebin LLP, San Francisco, California; Ryan T. Jenny and Gregory Y. Porter, Bailey & Glasser LLP, Washington, D.C.; R. Joseph Barton, Block & Leviton LLP, Washington, D.C.; for Plaintiff-Appellant.

John J. Buckley Jr. (argued), Juli Ann Lund, David S. Kurtzer-Ellenbogen, and Daniel F. Katz, Williams & Connolly LLP, Washington, D.C.; Scott P. Cooper, Proskauer Rose LLP, Los Angeles, California; Myron D. Rumeld, Proskauer Rose LLP, New York, New York; for Defendants-Appellees.

## OPINION

WALLACE, Circuit Judge:

A former employee and participant in Intel's retirement plans sued the company for allegedly investing retirement funds in violation of the Employee Retirement Income Security Act (ERISA). Intel moved to dismiss the complaint on the ground that the limitations period for his claims had expired. The magistrate judge[1] converted Intel's motion to dismiss into a motion for summary judgment and entered summary judgment in favor of Intel. The employee now appeals, arguing that the district court erred by concluding he had the requisite "actual knowledge" required by ERISA to trigger the limitations period. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

I.

Christopher Sulyma worked at Intel between 2010 and 2012 and participated in two of Intel's retirement plans, both governed by ERISA. The first was the Intel Retirement Plan, also known as the Intel Retirement Contribution Plan. The second was the Intel 401(k) Savings Plan.

Sulyma's account performance depended in part on investment decisions controlled by Intel, through the performance of different Intel "funds." Sulyma's Retirement Plan account was invested in the Intel Global Diversified Fund. Sulyma's Savings Plan account was invested in the Intel Target Date 2045 Fund. The Funds were managed by an Intel investment committee responsible for choosing and managing the Funds' asset allocations. The investment

---

[1] The parties consented to the jurisdiction of a magistrate judge. *See* 28 U.S.C. § 636.

committee members were appointed and supervised by a finance committee formed by members of the Intel Board of Directors. A third administrative committee was responsible for disclosing information about the Plans to plan participants. This opinion refers to these various groups as "Intel" unless the context otherwise requires.

When the Funds were established, they did not include significant "alternative investments," such as hedge funds. Intel increased the Funds' alternative investments to reduce the investment risk to the funds through greater diversification. But the reduction in investment risk came at the cost of higher fees and lower performance during periods of strong returns in the equity market. When equity markets did in fact begin to improve after the Great Recession, the Funds' performances lagged compared to index funds and comparable portfolios. Intel disclosed these investment decisions to Sulyma through various documents hosted on two websites. The documents disclosed both the fact of the alternative investments and the basic strategy behind the decision to invest in them. For instance, "Fund Fact Sheets" created in 2010 disclosed that the 2045 Fund was invested more in hedge funds than comparable portfolios, and that it was not performing as well as a result. Sulyma accessed some of this information on the websites, but he testified that he was not actually aware that his retirement accounts were invested in alternative investments while working at Intel.

Sulyma alleges that he eventually learned about the Funds' poor performance; he thereafter filed this action against Intel on October 29, 2015, raising six claims. His first and third claims alleged that the investment committee violated 29 U.S.C. § 1104 by imprudently investing in alternative investments. His second and fourth claims alleged that the administrative committee violated 29 U.S.C.

§ 1104 and 29 C.F.R. § 2250.404a-5(a) by failing to disclose adequately information about the alternative investments. His fifth claim alleged that the finance committee violated 29 U.S.C. § 1104 by failing to monitor the investment and administrative committees. His sixth claim alleged that all defendants were liable for knowing of the other defendants' ERISA violations and failing to remedy them.

Intel moved to dismiss the complaint as time-barred under 29 U.S.C. § 1113(2), which provides that an action under section 1104 may not be commenced more than "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." The district court converted the motion to dismiss into a motion for summary judgment and ordered discovery limited to the statute of limitations issue. After discovery, the district court ruled that there was no dispute of material fact that Sulyma had actual knowledge of the alternative investments more than three years before filing this action, and entered summary judgment in favor of Intel. Sulyma appeals, arguing that the district court applied the wrong standard of "actual knowledge" to his imprudent investing and derivative liability claims.[2]

II.

We review a district court's summary judgment de novo. *Curley v. City of North Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there

---

[2] The district court also granted summary judgment to Intel on Sulyma's failure-to-disclose claims. Sulyma has not appealed that ruling, and therefore we do not address it.

SULYMA V. INTEL CORP. INV. POLICY COMM.     7

are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Id.*

III.

ERISA imposes "a duty of care with respect to the management of existing trust funds, along with liability for breach of that duty, upon plan fiduciaries." *Lockheed Corp. v. Spink,* 517 U.S. 882, 887 (1996). Fiduciaries are required to act "solely in the interest of the participants and beneficiaries" and must exercise "the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1). A claim that an ERISA fiduciary has breached this prudent investor rule must be brought within six years after "the date of the last action which constituted a part of the breach or violation," or within three years after "the earliest date on which the plaintiff had actual knowledge of the breach or violation." *Id.* § 1113.

Sulyma initiated this action on October 29, 2015, and Intel has not argued that he did so beyond the six-year limitations period. The only issue on appeal is, therefore, whether Sulyma had "actual knowledge of the breach or violation" beyond the three-year limitations period, i.e., before October 29, 2012. Because there has been some confusion in our case law over the scope of the "actual knowledge" standard, we begin by explaining what it means for a plaintiff to have actual knowledge of a breach. We then apply that standard to each of Sulyma's claims.

A.

We follow a two-step test to determine whether a claim is barred by section 1113(2). *Ziegler v. Conn. Gen. Life Ins. Co*, 916 F.2d 548, 550 (9th Cir. 1990). First, we "isolate and

define the underlying violation upon which [the] plaintiff's claim is founded." *Id.* at 551 (alterations omitted) (quoting *Meagher v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418, 1422 (9th Cir. 1988)). Second, we "inquire when [the plaintiff] had 'actual knowledge' of the alleged breach or violation." *Id.* at 552 (emphasis omitted) (quoting 29 U.S.C. § 1113(2)). "This inquiry into [the] plaintiff['s] actual knowledge is entirely factual, requiring examination of the record. Identifying the breach may end the analysis in cases where the breach coincides with an ERISA plaintiff's actual knowledge of the breach." *Id.*

ERISA does not define "knowledge" or "actual knowledge." *See* 29 U.S.C. § 1002. But when Congress first enacted ERISA in 1974, section 1113 contained two kinds of knowledge requirement, actual knowledge and constructive knowledge. 29 U.S.C. § 1113(a)(2) (1976). The actual knowledge provision was identical to current section 1113(2), but the constructive knowledge provision provided that an action could not be commenced more than three years after the earliest date "on which a report from which [the plaintiff] could reasonably be expected to have obtained knowledge of such breach or violation was filed with the secretary under this title." *Id.* § 1113(a)(2)(B) (1976). Congress repealed the constructive knowledge provision in 1987, leaving only the actual knowledge requirement. Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, § 9342(b), 101 Stat. 1330. Since that time, the Supreme Court has not provided an authoritative construction for section 1113(2). *See Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015). Our own interpretations have likewise not always been straightforward, leading to some confusion in our district courts over what "actual knowledge" entails. *See, e.g.*, *In re Northrop Grumman*

SULYMA V. INTEL CORP. INV. POLICY COMM.        9

*Corp. ERISA Litigation*, 2015 WL 10433713, at *20 n.140 (C.D. Cal. Nov. 24, 2015) ("The court acknowledges that it is difficult to harmonize *Waller* [*v. Blue Cross of California*]'s holding with the rule announced in *Blanton* [*v. Anzalone*]"). Faced with this confusion, we begin our analysis by carefully examining our past cases to determine the meaning of "actual knowledge" in this circuit.

We first interpreted section 1113 in *Blanton v. Anzalone*, 760 F.2d 989 (9th Cir. 1985), decided before the 1987 amendment. In that case, the beneficiary of an ERISA plan account sued the plan's trustees. *Id.* at 991. The beneficiary alleged that the trustees breached their fiduciary duties by renting a building allegedly owned by the account to a corporation, of which the trustees were officers and shareholders. *Id.* The trustees counterclaimed for a declaration that the account did not have any interest in the building, arguing that the transaction that placed the interest in the beneficiary's account was void under 29 U.S.C. § 1106. *Id.* We held that the trustees' counterclaim was barred by section 1113 because the transaction took place in September 1977, more than three years prior to the action's commencement in June 1981. *Id.* In reaching our holding, we reasoned that the trustees "had actual knowledge of the transaction at the time it took place because they, as trustees, were parties to the transaction, and they . . . actually made the decision to undertake the transaction." *Id.* We rejected the trustees' argument that they "did not have actual knowledge of the violation until their attorney advised them that the transaction was prohibited" because section 1113 "is triggered by the [trustees'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." *Id.* at 991–92.

Case 5:15-cv-04977-NC   Document 150   Filed 11/28/18   Page 10 of 18

10      SULYMA V. INTEL CORP. INV. POLICY COMM.

We relied on *Blanton* in *Meagher*, 856 F.2d at 1423. In that case, the plaintiff was the beneficiary of an International Association of Machinists pension. *Id.* at 1419–20. The Association voted to amend the pension plan, reducing the plaintiff's benefits. *Id.* at 1420. The plaintiff retired in 1977 and began receiving checks with the reduced amount. *Id.* at 1419. In 1986, he filed an ERISA action under 29 U.S.C. § 1054. *Id.* at 1419, 1421. We held that the amendment was ineffective, and that every application of the amendment in the form of a reduced check constituted a violation of ERISA. *Id.* at 1423. We then quoted *Blanton*'s rule that the "statute of limitations is triggered by [a claimant's] knowledge of the transaction that constituted the alleged violation, not by [his] knowledge of the law," and concluded that every time the plaintiff received a reduced check "he had knowledge of the transaction, though he may not have known at the time that the reduction in benefits was unlawful under ERISA." *Id.* (alterations in original). Applying that reasoning, we held that the plaintiff had timely brought claims only for checks issued within the three years before he filed the action. *Id.*

*Meagher* applied the pre-1987 version of section 1113. Our first case interpreting the amended section was *Ziegler*, 916 F.2d 548. In that case, pension plan administrators contracted with an insurance company to invest the pension's funds. *Id.* at 549. The contract provided that, upon termination of the agreement, the insurance company would transfer the funds according to one of two options, a "book value" over five years, or a "market value" in a lump sum that adjusted the amount based on the insurance company's "market value formula." *Id.* The administrators opted for the lump sum, but then sued the insurance company under sections 1104 and 1106 for retaining the "market value" adjustment. *Id.* at 550. We held that the administrators'

SULYMA V. INTEL CORP. INV. POLICY COMM.   11

action was time-barred, reasoning that they had actual knowledge of the ERISA violation when the insurance company informed them that selection of the "market value" option would result in the insurance company's retaining a substantial portion of pension funds. *Id.* at 552. This holding was consistent with *Blanton* and *Meagher*, although *Ziegler* did not cite those cases in its analysis of actual knowledge. *See id*.

We next interpreted section 1113 in *Phillips v. Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509 (9th Cir. 1991). In that case, pension plan contributors sued the pension fund administrators under section 1104 for maintaining restrictive vesting requirements that excluded many contributors from obtaining benefits. *Id.* at 512. The plaintiffs had actual knowledge of the restrictive vesting requirements more than three years before they filed the action, but the district court nonetheless held that section 1113 was not a bar because the failure to relax the vesting requirement was a "continuing breach." *Id.* at 520. We reversed, holding that actual knowledge is "measured from the 'earliest date' on which [the plaintiff] knew of the breach." *Id.* We reasoned that, although a "continuous series of breaches may allow a plaintiff to argue that a new cause of action accrues with each new breach . . . [,] if the breaches are of the same kind and nature and the plaintiff had actual knowledge of one of them more than three years before commencing suit, [section 1113] bars the action." *Id.* at 521. A different rule, we explained, "essentially reads the 'actual knowledge' standard out of the statute." *Id.* at 520.

The foregoing cases establish that knowledge of illegality under ERISA is not required to trigger section 1113's three-year limitations period. Instead, knowledge of the allegedly illegal action or transaction can be sufficient.

However, none of these cases squarely held that knowledge of the transaction *alone* was sufficient "actual knowledge" under the statute. Rather, in each case the plaintiffs were parties to the transaction, *Blanton*, 760 F.2d at 991, or were specifically informed by the plan administrator of the action, *see Ziegler*, 916 F.2d at 552; *Meagher*, 856 F.2d at 1421, or actual knowledge of the breach was not at issue, *Phillips*, 944 F.2d at 520–21.

We first addressed whether knowledge of the underlying transaction was *necessarily* sufficient to trigger the three-year limitations period in *Waller v. Blue Cross of California*, 32 F.3d 1337 (9th Cir. 1994). In that case, retirement plan participants sued plan administrators under section 1104 for terminating the plan, using plan assets to purchase annuities on behalf of the participants, and retaining the remaining assets. *Id.* at 1338. The administrators moved to dismiss the complaint as time-barred, arguing that the three-year limitations period began to run as soon as the plaintiffs learned about the purchase of annuities. *Id.* at 1340–41. We rejected that argument, reasoning that "[w]e decline to equate knowledge of the purchase of annuities in this case with actual knowledge of the alleged breach of fiduciary duty," and we favorably quoted the D.C. Circuit rule that "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty cannot communicate the existence of an underlying breach." *Id.* at 1341 (alteration omitted) (quoting *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 957 (D.C. Cir. 1985)). Although in some tension with our previous cases, *Waller*'s holding did not conflict with the holdings in those cases because *Waller* considered only whether knowledge of the underlying transaction *alone* triggers section 1113(2). As previously explained, our earlier cases, while perhaps suggesting that rule, never squarely adopted it. *Waller* was thus the first case to consider whether

"actual knowledge of the breach" means only knowledge of the underlying transaction, and it established that actual knowledge must mean something more, at least in cases in which the underlying transaction does not disclose the nature of the breach.

The lesson we draw from these cases is thus two-fold. First, "actual knowledge of the breach" does not mean that a plaintiff has knowledge that the underlying action violated ERISA. *Blanton*, 760 F.2d at 992. Second, "actual knowledge of the breach" does not merely mean that a plaintiff has knowledge that the underlying action occurred. *Waller*, 32 F.3d at 1341. "Actual knowledge" must therefore mean something between bare knowledge of the underlying transaction, which would trigger the limitations period before a plaintiff was aware he or she had reason to sue, and actual legal knowledge, which only a lawyer would normally possess.

This leads us to the question of what this extra "something" must entail. In light of the statutory text and our case law, we conclude that the defendant must show that the plaintiff was actually aware of the nature of the alleged breach more than three years before the plaintiff's action is filed. The exact knowledge required will thus vary depending on the plaintiff's claim. For instance, in a section 1104 case, the plaintiff must be aware that the defendant has acted and that those acts were imprudent. *See, e.g.*, *Waller*, 32 F.3d at 1341. But in, for example, a section 1106 case, the plaintiff need only be aware that the defendant has engaged in a prohibited transaction, because knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred. *See, e.g.*, *Blanton*, 760 F.2d at 991–92. This interpretation is consistent with our statement in *Ziegler* that "[i]dentifying the breach may end

the analysis in cases where the breach coincides with an ERISA plaintiff's actual knowledge of the breach," 916 F.2d at 552, reconciles what could appear to be conflicting rules in *Blanton* and *Waller*, and flows naturally from section 1113(2)'s text: "three years after the earliest date on which the plaintiff had actual knowledge *of the breach or violation*." (Emphasis added.) The key is that, whatever the underlying ERISA claim, the limitations period begins to run once the plaintiff has sufficient knowledge to be alerted to the particular claim.

In reaching this holding, we emphasize that for a plaintiff to have sufficient knowledge to be alerted to his or her claim, the plaintiff must have *actual* knowledge, rather than constructive knowledge. As we explained in the Digital Millennium Copyright Act context, "[t]he statutory phrase 'actual knowledge' means what it says: knowledge that is actual, not merely a possible inference from ambiguous circumstances." *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 609 (9th Cir. 2018), *cert. denied*, 2018 WL 4031239 (U.S. Oct. 29, 2018) (No. 18-235). The text of section 1113 uses this statutory phrase, and Congress removed the constructive knowledge provision from the statute in 1987. This amendment strongly suggests that Congress intended for only an actual knowledge standard to apply. Thus, as in *Ventura*, we hold that the phrase "actual knowledge" means the plaintiff is actually aware of the facts constituting the breach, not merely that those facts were available to the plaintiff. To prevail on a statute of limitations defense on a section 1104 claim, as here, therefore, the defendant must show that there is no dispute of material fact that the plaintiff was actually aware that the defendant acted imprudently.

We recognize that this understanding of actual knowledge conflicts with the Sixth Circuit's reasoning in *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564, 571 (6th Cir. 2010). In that case, the Sixth Circuit held that, "[w]hen a plan participant is given specific instructions on how to access plan documents, their failure to read the documents will not shield them from having actual knowledge of the documents' terms." *Id.* We respectfully disagree with that analysis. As we have previously recognized, "plan participants who have been provided with [summary plan descriptions] are charged with *constructive* knowledge of the contents of the document," not actual knowledge. *See Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 908 (9th Cir. 2009) (emphasis added). We would therefore characterize the plaintiff described in *Brown* as having constructive knowledge only. Under our interpretation of ERISA, such knowledge is insufficient.

We also recognize Intel's argument that there are "strong policy reasons" to conclude that "actual knowledge" has a broader meaning, including knowledge that a plaintiff can glean from corporate disclosures. However, we are not persuaded that Intel's proffered policy reasons have force in this context. To begin with, Sulyma might just as easily argue that there are "strong policy reasons" to interpret actual knowledge narrowly, such as to promote fiduciary accountability. Which way the policy rationale cuts depends on the person making the argument. Second, and more fundamentally, weighing the policy merits of different knowledge standards was for Congress to undertake when it enacted, and then amended, section 1113, not for this court. Our task is not to make policy decisions, but to interpret the statute as enacted. Although policy reasoning may be relevant to our interpretation of the statute when grounded in

16   SULYMA V. INTEL CORP. INV. POLICY COMM.

ERISA's text or other congressional intent, Intel has not provided us with any such reasoning. We therefore hold that section 1113 means what it says: to trigger the three-year limitations period, a plaintiff must have "actual knowledge of the breach or violation."

B.

Applying this standard de novo to Sulyma's appealed claims, we conclude that the district court erred by entering summary judgment in favor of Intel.

1.

Sulyma's first claim alleged that the investment committee violated section 1104 by "adopting an asset allocation model such that the Intel [Target Date Fund portfolios] were and are comprised of approximately 20–25% Hedge Funds, 4–5% commodities, and where international equities account for over 50% of equity holdings." Sulyma alleged that this selection was unduly risky and that Intel acted imprudently by disregarding those risks or by insufficiently considering them before acting. Sulyma's third claim similarly alleged that the investment committee violated section 1104 by "increas[ing] the Diversified Fund's allocations to hedge funds and private equity and add[ing] allocations to commodities, resulting in 22.23% of fund assets, approximately $1.2 billion, allocated to these alternative investments." Sulyma alleged that, "[b]y the end of 2013, the Investment Committee had caused the Diversified Fund to allocate 36.71%, $2.33 billion, to such alternative investments." As with his first claim, Sulyma alleged that this selection was unduly risky and that the investment committee acted imprudently by disregarding or insufficiently considering those risks.

Intel argues that Sulyma had actual knowledge of this alleged breach because it disclosed information about plan asset allocation and the investment strategy behind that allocation before October 29, 2012. Intel points to Fund Fact Sheets in 2010, 2011, and 2012, a 2011 Qualified Default Investment Alternative Notice, a 2012 Summary Plan Description, 2012 Annual Disclosures, and several disclosures on Intel's website that explained Intel's alternative investments, the strategy behind those investments, and possible risks. Intel argues that, by disclosing the mix of investments that Sulyma claims was imprudent, along with the costs and benefits of such an approach, Sulyma had "actual knowledge of the breach."

We agree that Intel's evidence demonstrates that Sulyma had sufficient information available to him to know about the allegedly imprudent investments before October 29, 2012. However, that is insufficient. Because Sulyma brought a claim under section 1104, he was required to have actual knowledge both that those investments occurred, and that they were imprudent. But Sulyma declared that he was "unaware that the monies that [he] had invested through the Intel retirement plans had been invested in hedge funds or private equity" and that he did "not recall seeing any documents during [his] employment at Intel that alerted [him] to the fact that [his] retirement monies were significantly invested in hedge funds or private equity." Sulyma also testified that he was unaware of documents making these disclosures when specifically deposed on this point. These statements created a dispute of material fact that precluded summary judgment on these claims. On this record, only a fact-finder could have determined that Sulyma had the requisite "actual knowledge of the breach" for section 1113(2) to bar the action.

18    SULYMA V. INTEL CORP. INV. POLICY COMM.

### 2.

Sulyma also appeals from the district court's summary judgment on his derivative liability claims. Sulyma's fifth claim alleged that the finance committee violated section 1104 by failing to monitor the performance of the investment committees responsible for making the allegedly imprudent investment allocations. Sulyma's sixth claim alleged that all defendants violated section 1105 by knowing of the other defendants' breaches and taking no steps to remedy them.

Sulyma argues that the limitations period for his derivative claims could not begin to run until the end-point of the limitations period on his primary claims. That is incorrect. As we have previously explained, when an ERISA breach is ongoing such that it may be characterized as multiple violations, "[t]he earliest date on which a plaintiff became aware of any breach . . . start[s] the limitation period of [section 1113] running." *Phillips*, 944 F.2d at 520. Rather, as with Sulyma's first and third claims, summary judgment was inappropriate because there was a dispute of material fact over whether Sulyma had "actual knowledge of the breach" by 2012. If Sulyma in fact never looked at the documents Intel provided, he cannot have had "actual knowledge of the breach" because he cannot have been aware that imprudent investments were made and that other Intel fiduciaries were failing to monitor or remedy that imprudence. Because there was a dispute of material fact over Sulyma's actual knowledge, the district court erred by entering summary judgment in favor of Intel on these claims. We therefore reverse the district court's summary judgment and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**