1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINSTON R. ANDERSON, et al., | Case No. 19-CV-04618-LHK |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION TO DISMISS COUNTS I–VI** |
| | **OF PLAINTIFFS' FIRST AMENDED** |
| INTEL CORPORATION INVESTMENT | **CONSOLIDATED CLASS ACTION** |
| POLICY COMMITTEE, et al., | **COMPLAINT** |
| Defendants. | Re: Dkt. No. 117 |

Plaintiffs Winston Anderson and Christopher Sulyma (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against twenty-one individual Defendants and three committees of the Intel Corporation, Inc. (collectively, "Defendants"), alleging violations of the Employee Retirement Income Security Act ("ERISA").  Before the Court is Defendants' motion to dismiss Counts I–VI of Plaintiffs' First Amended Consolidated Class Action Complaint, ECF No. 117 ("Mot.").  Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS with prejudice Defendants' motion to dismiss Counts I–VI of Plaintiffs' First Amended Consolidated Class Action Complaint.

## I.     BACKGROUND

### A.  Factual Background

#### 1.  The Parties

1

United States District Court
Northern District of California

Plaintiff Anderson is a former employee of the Intel Corporation, where Anderson worked from 2000 to 2015.  First Amended Consolidated Class Action Complaint, ECF No. 113 ¶ 19 ("FAC").  Through his employment with Intel, Plaintiff Anderson participated in the Intel 401(k) Savings Plan and the Intel Retirement Contribution Plan (collectively, "the Intel Plans").  *Id.* Plaintiff Sulyma is also a former employee of the Intel Corporation, where Sulyma worked from 2010 to 2012.  *Id.* ¶ 20.  Through his employment with Intel, Plaintiff Sulyma was a participant in the Intel Plans.  *Id.*

Plaintiffs name the following committees and individuals as defendants in this action: the Intel Corporation Investment Policy Committee ("the Investment Committee") and its members;[1] the Intel Retirement Plans Administrative Committee ("the Administrative Committee") and its members;[2] the Finance Committee of the Intel Corporation Board of Directors ("the Finance Committee" and its members;[3] and the Chief Financial Officers of the Intel Corporation ("the Chief Financial Officers").[4]  *Id.* ¶¶ 21–49.  Additionally, Plaintiffs named the Intel 401(k) Savings Plan and the Intel Retirement Contribution Plan as nominal defendants.  *Id.* ¶¶ 50–51.

Before January 1, 2018, the "Investment Committee Defendants had the authority, discretion, and responsibility to select, monitor, and remove or replace investment options" in the Intel Plans.  *Id.* ¶ 132.  Effective January 1, 2018, the "Global Trust Company" allegedly was appointed to serve as trustee for the Intel Plans.  *Id.* ¶ 5.  The Investment Committee and the Administrative Committee are both named fiduciaries of the Intel Plans.  *Id.* ¶¶ 21, 28.

## 2.  The Intel Plans

---

[1] Plaintiffs have named as Defendants five individual members of the Investment Committee. Those Defendants are Christopher Geczy, Ravi Jacob, David Pottruck, Arvind Sodhani, and Richard Taylor.  FAC ¶¶ 22–26.

[2] Plaintiffs have named as Defendants six individual members of the Administrative Committee. Those Defendants are Terra Castaldi, Ronald D. Dickel, Tiffany Doon Silva, Tami Graham, Cary Klafter, and Stuart Odell.  FAC ¶¶ 29–34.

[3] Plaintiffs have named as Defendants six individual members of the Finance Committee.  Those Defendants are Charlene Barshefsky, Susan Decker, John Donahoe, Reed Hundt, James Plummer, and Frank Yeary.  FAC ¶¶ 37–42.

[4] Plaintiffs have named as Defendants four individual Chief Financial Officers.  Those Defendants are Stacy Smith, Robert Swan, Todd Underwood, and George Davis.  FAC ¶¶ 45–48.

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1    According to Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC"),

2    both of the Intel Plans are "employee pension benefit plan[s]" within the meaning of ERISA

3    § 3(2)(A), 29 U.S.C. § 1002(2)(A), and "defined contribution plan[s]" within the meaning of

4    ERISA § 3(34), 29 U.S.C. § 1002(34).  Both Intel Plans are "maintained and sponsored by Intel."

5    FAC ¶¶ 50, 51.

6    The Intel 401(k) Savings Plan is a "contributory defined contribution plan" that covers

7    eligible United States employees of Intel Corporation and its subsidiaries.  *Id.* ¶ 77.  All eligible

8    Intel employees are automatically enrolled in the 401(k) Savings Plan pursuant to Section 3(a) of

9    the Plan.  *Id.*  Benefits under the 401(k) Savings Plan are funded by Plan participants' tax-deferred

10   contributions and discretionary contributions made by Intel.  *Id.* ¶ 78.  Participants in the Intel

11   401(k) Savings Plan are able to direct the investment of their individual account balances into the

12   investment options of their choice that are offered by the Plan.  *Id.* ¶ 82.

13   The Intel Retirement Contribution Plan is a "non-contributory defined contribution plan"

14   in which benefits provided under the Plan are funded by discretionary contributions by Intel.  *Id.*

15   ¶ 89.  Before January 1, 2011, United States Intel Employees were automatically enrolled in the

16   Intel Retirement Contribution Plan when they became eligible to participate.  *Id.* ¶ 88.  In contrast,

17   after January 1, 2011, employees hired on or after January 1, 2011, are no longer eligible to

18   participate in the Retirement Contribution Plan.  *Id.*  Before January 1, 2015, participants in the

19   Retirement Contribution Plan under the age of 50 were not allowed to direct the investment of

20   Intel's contributions on their own behalf, and Investment decisions were made by the Investment

21   Committee.  *Id.* ¶ 94.  Participants aged 50 and over had some discretion in directing the

22   investment of Intel's contributions.  *Id.* ¶ 93.  However, after January 1, 2015, the Retirement

23   Contribution Plan was amended to allow all participants to direct their investments into any of the

24   investment options made available under the Plan.  *Id.* ¶ 96.

25   ### 3.  The Intel Funds

26   Plaintiffs allege that the Investment Committee designed and implemented two retirement

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

3

investment strategies.  The first, the Target Date Funds (also called "TDFs"), use a dynamic allocation model whereby the allocation to asset classes within the fund changes over time.  *Id.* ¶ 2.  These funds hold a mix of asset classes that include "stocks, bonds, and cash equivalents," which are "readjusted to become more conservative over the time horizon of the fund," as the fund approaches the target date.  *Id.* ¶ 227.  Target date funds "are generally offered as a suite of 'vintages' in five-year or ten-year intervals where the vintage refers to the date of the fund such as 2045."  *Id.* ¶ 7.  This date indicates that the fund is intended for participants who will reach normal retirement age (i.e., 65) around that given year.  Therefore, the Intel TDF 2045 is intended for those who would reach normal retirement age around 2045.  According to the FAC, the Intel target date funds are the default investments for the Intel 401(k) Savings Plan.  *Id.* ¶ 9.  However, participants in the Intel Retirement Contribution Plan can also choose to invest in target date funds.

The second investment strategy, the Global Diversified Fund (also called "GDF"), is a multi-asset portfolio with a fixed allocation model.  *Id.* ¶ 2.  The Intel Global Diversified Fund is the default investment option of the Intel Retirement Contribution Plan, which means that unless a participant makes an alternative election, that participant is defaulted into the Global Diversified Fund.  *Id.* ¶ 98.  However, participants in the Intel 401(k) Savings Plan can also choose to direct their investments to a Global Diversified Fund.  *See id.* ¶ 202.

### 4.  The Investment Committee's Alleged Conduct

Plaintiffs allege that, beginning after the 2008 Financial Crisis, the Investment Committee redesigned the Intel Funds to include not only stocks and bonds but also other asset classes like hedge funds, private equity and commodities (collectively, "Non-Traditional Investments").  *Id.* ¶¶ 127, 329.

Plaintiffs allege that the Investment Committee began to allocate an increased percentage of the Intel TDFs' assets to Non-Traditional Investments.  *Id.* ¶ 129.  The Intel TDFs' assets included approximately 23% hedge funds and commodities in 2011.  *Id.*  Plaintiffs further allege

4

United States District Court
Northern District of California

1

2

3

that the strategy of increasing the Funds' allocation to Non-Traditional Investments increased in the following years, such that by September 2015, Intel TDFs in the Intel 401(k) Savings Plan had between 27.46% and 37.2% of the funds' assets in Non-Traditional Investments.  *Id.* ¶ 199.

4

5

6

Similarly, by September 2015, 56.22% of the assets in the Intel GDF in the 401(k) Savings Plan were allocated to Non-Traditional Investments.  *Id.* ¶ 202.  Plaintiffs allege that this strategy of investing in Non-Traditional Investments continued through at least March of 2017.  *Id.* ¶ 203.

7

8

9

10

11

Additionally, starting in 2011, the Investment Committee allegedly began to dramatically increase the Intel GDF's investment in Non-Traditional Investments.  *Id.* ¶ 127.  Specifically, at the end of 2008, the Intel GDF held approximately 6.17% of its assets in Non-Traditional Investments.  In comparison, by the end of 2013, the Intel GDF held approximately 36.71% of its assets in Non-Traditional Investments.  *Id.*

12

13

14

15

16

Although the Intel Funds allegedly invested heavily in Non-Traditional Assets as a risk mitigation strategy, *id.* ¶ 217, Plaintiffs allege that the Intel TDFs and GDFs have performed poorly, and that the Funds' poor performance can be attributed largely to the Funds' "substantial allocations to hedge funds."  *Id.* ¶ 205.  According to Plaintiffs, the Funds "gave up the long-term benefit of investing in equity, which delivers superior returns" to hedge funds.  *Id.* ¶ 217.

17

18

19

20

21

22

23

24

25

26

Plaintiffs further allege that the strategy of allocating significant proportions of the Intel Funds' assets to Non-Traditional Investments deviated from prevailing professional asset manager standards of investment.  *Id.* ¶¶ 222–40.  More specifically, Plaintiffs allege that peer TDFs allocate much fewer assets to hedge funds or private equity funds, *id.* ¶ 224–25, and that funds comparable to the Intel GDFs allocate almost no assets to private equity funds, *id* ¶ 232.  Plaintiffs also allege that the Intel 401(k) Savings Plan's disclosure documents hide "the true nature of the underlying investments" by being silent as to any potential risks of Non-Traditional Investments. *Id.* ¶ 300.  Moreover, Plaintiffs allege that the Administrative Committee failed to properly disclose to the Plan participants the risks associated with investing in hedge funds and private equity.  *Id.* ¶ 364.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

Finally, Plaintiffs allege that the Investment Committee used the Funds to invest in Non-Traditional Assets such as hedge funds in order to benefit Intel and the Intel Capital Corporation ("Intel Capital") to the detriment of Plan participants.  *Id.* ¶¶ 306–21.  Intel Capital, Intel's venture capital division and an Intel subsidiary, *id.* ¶ 53, invests in privately held companies that compliment Intel's business, such as technology startup companies, *id.* ¶ 306.  Plaintiffs allege that the Investment Committee invested the Intel Funds' assets in private equity funds established by some of these investment companies, such as BlackRock, General Atlantic, and Goldman Sachs, which invest in the same startups as Intel Capital.  *Id.* ¶ 306.  Plaintiffs allege that the investment companies with whom Intel Capital partners "have served as [intermediaries] between Intel Capital and the startups that Intel Capital wants to assess."  *Id.*  Plaintiffs also allege that, since at least 2009, Intel or Intel Capital also invested in private equity companies that complimented Intel's business, *id.* ¶ 312, and that the Investment Committee failed to consider the negative repercussions of these investments on participants' benefits under the Retirement Contribution Plan because Investment Committee members were less likely to suffer those repercussions, *id.* ¶ 216–21.

Plaintiffs bring the instant action on behalf of a proposed class consisting of "[a]ll participants in the Intel Retirement Contribution Plan and the Intel 401(k) Savings Plan, whose accounts were invested in any one of the Intel Target Date Funds, the Intel Global Diversified Fund, or the Intel 401K Global Diversified Fund at any time on or after October 29, 2009."  *Id.* ¶ 56.

**B.  Procedural History**

This case has a long and complicated history involving three lawsuits filed in the U.S. District Court for the Northern District of California.

**1.  *Sulyma v. Intel Corporation Investment Policy Committee*, No. 15-CV-04977**

On October 29, 2015, Plaintiff Christopher Sulyma ("Sulyma") filed *Sulyma v. Intel Corporation Investment Policy Committee*, No. 15-CV-04977 (N.D. Cal.), a class action complaint

1    alleging six violations of ERISA regarding the Intel Funds at issue in the instant case.  Class

2    Action Complaint, *Sulyma*, No. 15-CV-04977 (N.D. Cal. October 29, 2015), ECF No. 1.  The

3    Court hereafter refers to this 2015 case as "*Sulyma*."  In *Sulyma*, Sulyma sued the Investment

4    Committee, the Administrative Committee, and the Finance Committee, as well as some of the

5    same individual defendants as in the instant case.  *Id.*

6         Sulyma is also a plaintiff in the instant case.  Plaintiffs' counsel in *Sulyma* also represents

7    Plaintiffs in the instant case.  *Compare id.*, *with* FAC.

8         In *Sulyma*, the parties consented to magistrate judge jurisdiction, and the case was assigned

9    to United States Magistrate Judge Nathanael Cousins.  Plaintiff's Consent to Magistrate

10   Jurisdiction, *Sulyma*, No. 15-CV-04977 (N.D. Cal. Nov. 9, 2015), ECF No. 30; Defendants'

11   Consent to Magistrate Judge Jurisdiction, *Sulyma*, No. 15-CV-04977 (N.D. Cal. June 7, 2016),

12   ECF No. 107.

13        **2.  *Lo v. Intel Corp.*, No. 16-CV-00522**

14        On January 31, 2016, Plaintiff Florence Lo ("Lo") filed *Lo v. Intel Corp*., No. 16-CV-

15   00522 (N.D. Cal.), a class action complaint alleging five violations of ERISA regarding the Intel

16   Funds at issue in the instant case.  Class Action Complaint, *Lo v. Intel Corp.*, No. 16-CV-00522

17   (N.D. Cal. Jan. 31, 2016), ECF No. 1.  The Court hereafter refers to this case as "*Lo*."  In *Lo*, Lo

18   sued the Investment Committee, the Administrative Committee, and the Finance Committee, as

19   well as some of the same individual defendants in the instant case.  *Id.*

20        Lo was a plaintiff in the instant case.  However, Lo was not included as a plaintiff in the

21   First Amended Consolidated Class Action Complaint ("FAC") in the instant case.  Therefore, Lo

22   is no longer a plaintiff in the instant case as of March 22, 2021.  *See* ECF No. 113.  Plaintiffs'

23   counsel in *Lo* was different than Plaintiffs' counsel in *Sulyma*.

24        In *Lo*, the parties consented to magistrate judge jurisdiction, and the case was assigned to

25   United States Magistrate Judge Susan van Keulen.  *See* Plaintiff's Consent to Magistrate Judge

26   Jurisdiction, *Lo*, 16-CV-00522 (N.D. Cal. Feb. 16, 2016), ECF No. 4.

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

*United States District Court*
*Northern District of California*

7

United States District Court
Northern District of California

### 3.   The Consolidation of *Sulyma* and *Lo*

On February 17, 2016, Sulyma filed a motion to consolidate the *Sulyma* case with *Lo*. Motion to Consolidate Cases, *Sulyma*, No. 15-CV-04977 (N.D. Cal. Feb. 17, 2016).  Judge Cousins granted the motion to consolidate on February 18, 2016.  *See* Order Granting Plaintiffs' Unopposed Motion to Consolidate, *Sulyma*, No. 15-CV-04977 (N.D. Cal. Feb. 18, 2016), ECF No. 68.  *Lo* was thereafter transferred to Judge Cousins.

On April 5, 2016, Judge Cousins appointed plaintiffs' counsel in the original *Sulyma* case to represent the plaintiffs in the consolidated cases.  Order Appointing Interim Lead Counsel and Interim Lead Plaintiff, *Sulyma* No. 15-CV-04977 (N.D. Cal. April 5, 2016), ECF No. 88.  The plaintiffs in the consolidated cases filed a consolidated class action complaint on April 26, 2016. Consolidated Class Action Complaint, *Sulyma*, No. 15-CV-04977 (N.D. Cal. April 26, 2016), ECF No. 93.

On May 26, 2016, defendants in the consolidated cases filed a motion to dismiss.  *Sulyma*, No. 15-CV-04977 (N.D. Cal. May 26, 2016), ECF No. 103.  In their motion to dismiss, defendants made several arguments, but they primarily argued that plaintiffs' claims were barred by the relevant statute of limitations.  *Id.*

On August 18, 2016, Judge Cousins issued an order converting defendants' motion to dismiss into one for summary judgment on the statute of limitations question.  *Sulyma*, No. 15-CV-04977 (N.D. Cal. Aug. 18, 2016), ECF No. 114.  After the parties conducted discovery and submitted briefing on the motion for summary judgment, Judge Cousins found in favor of the defendants on March 31, 2017 and entered judgment in the case.  Order Granting Defendants' Motion for Summary Judgment, *Sulyma*, No. 15-CV-04977 (N.D. Cal. March 31, 2017), ECF No. 145.

Plaintiffs filed a notice of appeal to the Ninth Circuit on April 24, 2017.  Notice of Appeal, *Sulyma*, No. 15-CV-04977 (April 24, 2017), ECF No. 147.  The Ninth Circuit reversed Judge Cousins' order on November 28, 2018.  *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069 (9th Cir. 2018).  On February 26, 2020, the United States Supreme Court affirmed the Ninth

8

1   Circuit and remanded the consolidated cases back to the district court.  *Intel Corp. Inv. Pol'y*

2   *Comm. v. Sulyma*, 140 S. Ct. 768 (2020).

3       **4.  *Anderson v. Intel Corporation Investment Policy Committee*, No. 19-CV-4618**

4           On August 9, 2019, Plaintiff Winston Anderson ("Anderson") filed *Anderson v .Intel*

5   *Corporation Investment Policy Committee*, No. 19-CV-04618 (N.D. Cal.).  Anderson's initial

6   class action complaint alleged seven violations of ERISA regarding the Intel Funds.  ECF No. 1.

7   Just as in *Sulyma* and *Lo*, Anderson sued the Investment Committee, the Administrative

8   Committee, and the Finance Committee, as well as several individual defendants.  *Id.*

9           Plaintiff's counsel in Anderson were identical to plaintiffs' counsel in the *Sulyma* and *Lo*

10   consolidated cases.  *Compare* Consolidated Class Action Complaint, *Sulyma*, No. 15-CV-04977

11   (April 26, 2016), ECF No. 93, *with* ECF No. 1.

12           *Anderson* was originally assigned to United States Magistrate Judge Susan van Keulen.

13   However, Plaintiffs' counsel in *Anderson* declined magistrate judge jurisdiction.  ECF No. 4.

14   Therefore, the case was reassigned to the undersigned judge.

15           On May 7, 2020, less than three months following the United States Supreme Court's

16   decision in *Sulyma*, Anderson filed a motion to consolidate his case with *Sulyma* and *Lo*.  ECF

17   No. 77.  On May 27, 2020, the Court granted the motion to consolidate the *Sulyma*, *Lo*, and

18   *Anderson* cases, and the consolidated *Sulyma* and *Lo* cases was reassigned from Judge Cousins to

19   the undersigned judge because Anderson had declined magistrate judge jurisdiction.  ECF No. 89.

20           On June 24, 2020, Plaintiffs filed their first consolidated class action complaint.  ECF

21   No. 95.  On July 22, 2020, Defendants filed a motion to dismiss.  ECF No. 99.  On August 19,

22   2020, Plaintiffs filed an opposition to Defendants' motion to dismiss.  ECF No. 101.  On

23   September 2, 2020, Defendants filed their reply.  ECF No. 104.

24           On January 2, 2021, the Court granted Defendants' motion to dismiss with leave to amend

25   ("2021 Order").  ECF No. 109.  Specifically, the Court held that Plaintiffs failed to plausibly

26   allege that the Investment Committee violated the duty of prudence by selecting and maintaining

27

28

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

the Intel Funds' investment in Non-Traditional Investments.  *Id.* at 23–24.  The Court also held that Plaintiffs failed to allege that the Investment Committee breached its duty of loyalty under ERISA because Plaintiffs' allegations were conclusory and duplicative of their allegations supporting their claim of violation of the duty of prudence.  *Id.* at 24–25.  Additionally, the Court held that Plaintiffs lacked Article III standing to bring their claims alleging breach of the duty of prudence against the Administrative Committee.  *Id.* at 26–28.  Finally, the Court held Plaintiffs' derivative claims necessarily failed because Plaintiffs did not plausibly allege a primary violation of ERISA.  *Id.* at 28–29.  The Court gave Plaintiffs leave to amend their first consolidated class action complaint in order to address the deficiencies identified in the 2021 Order and in Defendants' motion to dismiss.  *Id.* at 29.

On March 22, 2021, Plaintiffs submitted their First Amended Consolidated Class Action Complaint ("FAC").  ECF No. 113.  Lo was not a plaintiff in the FAC and was thus dismissed on March 22, 2021.

On May 5, 2021, Defendants filed their motion to dismiss, ECF No. 117 ("Mot.").  On June 9, 2021, Plaintiffs filed an opposition to Plaintiffs' motion to dismiss, ECF No. 122 ("Opp.").  On July 1, 2021, Defendants filed a reply, ECF No. 124 ("Reply").

**C.  Requests for Judicial Notice**

In connection with the instant motion to dismiss, Defendants request judicial notice of 21 documents: Intel's 2013 Summary Plan Description ("Exhibit 1"); Intel's 2015 Summary Plan Description ("Exhibit 2"); Intel's 401(k) Savings Plan Investment Policy Statement as of January 12, 2017 ("Exhibit 3"); Global Diversified Fund Fact Sheet as of December 31, 2011 ("Exhibit 4"); Global Diversified Fund Fact Sheet as of September 30, 2015 ("Exhibit 5"); Global Diversified Fund Fact Sheet as of December 31, 2017 ("Exhibit 6"); Global Diversified Fact Sheet as of September 30, 2015 ("Exhibit 7"); Target Date 2045 Fund Fact Sheet as of December 31, 2011 ("Exhibit 8"); Target Date 2035 Fund Fact Sheet as of September 30, 2015 ("Exhibit 9"); Target Date 2015 Fund Fact Sheet as of September 30, 2015 ("Exhibit 10"); Target Date 2035

10

United States District Court
Northern District of California

Fund Fact Sheet as of December 31, 2017 ("Exhibit 11"); a Report of the Investors' Committee to the President's Working Group on Financial Markets as of April 15, 2008 ("Exhibit 12"); a United States Government Accountability Office Report regarding the challenges and risks of investing in hedge funds and private equity as of August 2008 ("Exhibit 13"); "Plans Face Valuation and Other Challenges When Investing in Hedge Funds and Private Equity" ("Exhibit 14"); "Plans Face Challenges When Investing in Hedge Funds and Private Equity" ("Exhibit 15"); Letter from Louis J. Campagna, Chief of the Division of Fiduciary Interpretations within the Employee Benefits Security Administration's Office of Regulations and Interpretations ("Exhibit 16"); "Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries" ("Exhibit 17"); "Intel Custom Target-Date Evolution" ("Exhibit 18"); "Morningstar 2018 Target-Date Fund Landscape" ("Exhibit 19"); T. Rowe Price Retirement 2015 Fund Fact Sheet ("Exhibit 20"); and a Fidelity Freedom 2035 Fund Summary Prospectus ("Exhibit 21").  Request for Judicial Notice, ECF No. 118 ("RJN").

The 2021 Order either judicially noticed or deemed incorporated by reference into Plaintiffs' first consolidated class action complaint Exhibits 1–6, 8–11, and 15–20.  *See* ECF No. 109 at 7–9.

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Moreover, courts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).  However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

11

United States District Court
Northern District of California

1    Defendants argue that Exhibits 1–15, 18, and 19 are properly incorporated by reference in

2    Plaintiffs' FAC because they form the basis for Plaintiffs' claims and are referenced throughout

3    the FAC.  RJN at 4–8.  Defendants also argue that Exhibits 16, 17, 19, and 21 are properly subject

4    to judicial notice because they are government documents and publicly available investor sheets.

5    RJN at 7–8.  In response, Plaintiffs argue that Exhibits 1, 6, 9, 10, and 18 are not mentioned in

6    their FAC and therefore cannot properly be incorporated by reference.  Plaintiffs' Opposition to

7    Defendants' Request for Judicial Notice, ECF No. 121, at 1, 3.  Plaintiffs also argue that the rest of

8    Defendants' exhibits could be properly considered under the doctrines of judicial notice or

9    incorporation by reference but that Defendants "attempt improperly to use statements in those

10   documents as if they are presumptively true or accurate, and as proof of Defendants' intent and

11   fiduciary prudence."  *Id.* at 1.  Therefore, Plaintiffs argue that the Court should deny Defendants'

12   request for judicial notice.  *Id.* at 1–2.

13   The Court agrees with Defendants that Exhibits 1–15, 18, and 19 are properly incorporated

14   by reference.  Although Exhibits 1, 6, 9, 10, and 18 were not expressly cited in the FAC, all five

15   exhibits are referenced, mentioned, or quoted.  FAC ¶ 389 (quoting Exhibit 1); *id.* ¶¶ 137, 178,

16   301–02 (referencing TDF factsheets, which include Exhibits 6, 9, and 10); *id* ¶¶ 85, 267 n.40

17   (referencing exhibit 18).  Additionally, all five exhibits that Plaintiffs challenge were incorporated

18   by reference in Plaintiffs' first consolidated class action complaint, and many references to these

19   documents remain unaltered.

20   The Court therefore GRANTS Defendants' request for judicial notice.  However, the Court

21   notes that to the extent any facts in documents subject to judicial notice are subject to reasonable

22   dispute, the Court does not take judicial notice of those facts.  *See Lee*, 250 F.3d at 689.

23   **II.    LEGAL STANDARD**

24   Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

25   action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

26   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2  defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

3  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

4  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

5       For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

6  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

7  party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

8  However, a court need not accept as true allegations contradicted by judicially noticeable facts.

9  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  Mere "conclusory allegations of law

10  and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

11  F.3d 1179, 1183 (9th Cir. 2004).

## III.     DISCUSSION

13       Six of Plaintiffs' seven causes of action in Plaintiffs' First Amended Consolidated Class

14  Action Complaint ("FAC") are made on behalf of Plaintiffs and a putative class of participants in

15  the Intel Plans.  These six causes of action are: (1) breaches of duty under ERISA § 404(a) by the

16  Investment Committee in selecting and monitoring the investments in the Intel Plans; (2) breaches

17  of duty under ERISA § 404(a) by the Investment Committee in managing the assets of the Intel

18  Plans, including failure to monitor and evaluate the asset allocation of the Intel Funds;

19  (3) breaches of duty under ERISA §§ 404(a)(1)(A) and 404(a)(1)(B) by the Administrative

20  Committee for failing to provide material and accurate disclosures to plan participants;

21  (4) violation of ERISA § 102(a) by the Administrative Committee for issuing summary plan

22  descriptions that failed to properly disclose and explain the risks associated with the asset

23  allocations in the Intel Funds; (5) breaches of duty under ERISA § 404(a) by the Finance

24  Committee and Chief Financial Officers for failure to monitor the Investment Committee; and

25  (6) co-fiduciary liability under ERISA § 405 against all Defendants.  FAC. ¶¶ 393–466.

26  Defendants move to dismiss each of these six causes of action.

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1    Plaintiffs' seventh cause of action is an individual cause of action brought by Plaintiff

2  Winston Anderson ("Anderson"), which alleges that the Administrate Committee failed to provide

3  documents upon request to Anderson in violation of ERISA § 104(b)(4), 29 U.S.C. § 1024(B)(4)

4  and 29 C.F.R. § 2550.404a-5.  Defendants do not move to dismiss this cause of action.

5    Below, the Court first addresses the parties' arguments regarding the Investment

6  Committee's alleged breach of the duties of prudence and loyalty.  The Court then addresses the

7  parties' arguments regarding the Administrative Committee's alleged breach of the duty of

8  prudence with regard to summary plan descriptions and plan summaries.  Finally, the Court

9  addresses the parties' arguments regarding Plaintiffs' claims of failure to monitor and co-fiduciary

10  liability.

11    **A.  Counts I and II: Breaches of Fiduciary Duty Under ERISA § 404(a)**

12    As with Plaintiffs' first consolidated class action complaint, Plaintiffs allege in their FAC

13  that the Investment Committee committed several breaches of duty under ERISA § 404(a).  Under

14  ERISA, plan fiduciaries, like the Investment Committee, must discharge their duties in accordance

15  with the duty of prudence, duty of loyalty, duty to diversify investments, and duty to act in

16  accordance with the documents governing the Plan.  29 U.S.C. § 1104(a)(1).  In their FAC,

17  Plaintiffs allege in both Count I and Count II that the Investment Committee breached the duty of

18  prudence and the duty of loyalty.

19    Below, the Court addresses whether Plaintiffs have stated a claim for breach of the duty of

20  prudence then addresses whether Plaintiffs have stated a claim for breach of the duty of loyalty.

21    **1.  Breach of the Duty of Prudence**

22      **a.  Legal Background**

23    ERISA requires that plan fiduciaries exercise "the care, skill, prudence, and diligence

24  under the circumstances then prevailing that a prudent man acting in a like capacity and familiar

25  with such matters would use in the conduct of an enterprise of a like character and with like aims."

26  *Id.* § 1104(a)(1)(B).  Under this standard, the Court must determine "whether the individual

27

28  Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  trustees, at the time they engaged in the challenged transactions, employed the appropriate

2  methods to investigate the merits of the investment and to structure the investment." *Donovan v.*

3  *Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983); *see also White v. Chevron Corp*, 2017 WL

4  2352137, at *4 (N.D. Cal. May 31, 2017) (same).  This duty extends not only to the initial

5  selection of investments, but also to the continuous monitoring of investments, and requires that

6  imprudent investments be removed.  *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015).

7  When analyzing prudence, the Court's focus is on the fiduciary's "conduct in arriving at a

8  decision, not on its results."  *See Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan*

9  *Stanley Inv. Mgmt.* ("*St. Vincent*"), 712, F.3d 705, 716 (2d Cir. 2013).  Therefore, "[p]oor

10  performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries

11  failed to conduct an adequate investigation . . . ERISA requires a plaintiff to plead some other

12  indicia of imprudence."  *White*, 2017 WL 2352137, at *20; *see also Dorman v. Charles Schwab*

13  *Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (same).

14      When plaintiffs allege that a defendant has breached the duty of prudence because "a

15  prudent fiduciary in like circumstances would have selected a different fund based on the cost or

16  performance of the selected fund, [plaintiff] must provide a sound basis for comparison—a

17  meaningful benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 833 (8th Cir. 2018).  Case

18  law shows that labeling funds as "comparable" or as a "peer" is insufficient to establish that

19  comparator funds are meaningful benchmarks against which to compare a challenged funds'

20  performance.  In *Meiners*, the Eighth Circuit found that plaintiffs cannot "dodge the requirement

21  for a meaningful benchmark by merely finding a less expensive alternative fund or two with some

22  similarity."  *Id.* at 823.  This is because even funds with some similarity may have different "aims,

23  different risks, and different potential rewards that cater to different investors."  *Davis v. Wash.*

24  *Univ.*, 960 F.3d 478, 485 (8th Cir. 2020).

25      A fund that is a "meaningful benchmark" must therefore have similar aims, risks, and

26  potential rewards to a challenged fund.  The rationale for the rule that plaintiffs must identify a

27

28
Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

meaningful benchmark is that "[c]omparing apples and oranges is not a way to show that one is better or worse than the other." *Id.* at 484–85; *see also Wehner v. Genentech, Inc.*, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021) (noting that the allegation that comparator funds were in the same category as a challenged fund was "insufficient" to make an "apples-to-apples comparison" (internal quotation marks omitted)); *Davis v. Salesforce.com*, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (holding that conclusory allegations that funds had "the same investment style" were "not sufficient to state a claim of relief").

### b.  The 2021 Order

The Court's January 1, 2021 Order on Defendants' first motion to dismiss ("2021 Order") dismissed Plaintiffs' claim that the Investment Committee Defendants violated the duty of prudence based on the allegations in Plaintiffs' first consolidated class action complaint. Specifically, the Court held that Plaintiffs had failed to state a claim for the Investment Committee's violation of the duty of prudence because Plaintiffs failed to identify a "meaningful benchmark" in their first consolidated class action complaint.  ECF No. 109 at 16.  The Court explained that Plaintiffs' allegations went no further than labeling funds as "comparable" or "a peer," and that absent factual allegations "to support a finding that the funds that Plaintiffs identify" provided a meaningful benchmark against which to evaluate the performance or the fees of the Intel Funds, Plaintiffs' first consolidated class action complaint failed to state a claim for breach of the duty of prudence.  *Id.* at 16, 18.  The Court also explained that any factual allegations that supported a finding that the funds Plaintiffs identified were meaningful would explain why those funds did not have "different 'aims, different risks, and different potential rewards that cater to different investors.'"  *Id.* at 18 (quoting *Davis v. Wash. Univ.*, 960 F.3d at 485).  The Court further clarified that absent factual allegations identifying meaningful benchmarks, Plaintiffs' complaint would not adequately state a claim for breach of the duty of prudence, "even in conjunction with further allegations of poor performance and self-dealing by the Investment Committee."  *Id.*; *see also id.* at 23 ("Plaintiffs have failed to allege facts that

16

would demonstrate that their chosen 'comparable' funds are a meaningful benchmark.").

In the 2021 Order, the Court informed Plaintiffs that "failure to cure the deficiencies identified in [the Court's] Order and in Defendants' motion to dismiss" would result in "dismissal of Plaintiffs' deficient claims with prejudice.

### c.  Plaintiffs Do Not Identify a Meaningful Benchmark

As discussed above, Plaintiffs allege that the Investment Committee designed and implemented two retirement investment strategies.  The first, the Target Date Funds (also called "TDFs"), use a dynamic allocation model whereby the allocation to asset classes within the fund changes over time.  *Id.* ¶ 2.  These funds hold a mix of asset classes that include "stocks, bonds, and cash equivalents," which are "readjusted to become more conservative over the time horizon of the fund," as the fund approaches the target date.  *Id.* ¶ 227.  Target date funds "are generally offered as a suite of 'vintages' in five-year or ten-year intervals where the vintage refers to the date of the fund such as 2045."  *Id.* ¶ 7.  This date indicates that the fund is intended for participants who will reach normal retirement age (i.e., 65) around that given year.  Therefore, the Intel TDF 2045 is intended for those who would reach normal retirement age around 2045. According to the FAC, the Intel target date funds are the default investments for the Intel 401(k) Savings Plan.  *Id.* ¶ 9.  However, participants in the Intel Retirement Contribution Plan can also choose to invest in target date funds.

The second investment strategy, the Global Diversified Fund (also called "GDF"), is a multi-asset portfolio with a fixed allocation model.  *Id.* ¶ 2.  The Intel Global Diversified Fund is the default investment option of the Intel Retirement Contribution Plan, which means that unless a participant makes an alternative election, that participant is defaulted into the Global Diversified Fund.  *Id.* ¶ 98.  However, participants in the Intel 401(k) Savings Plan can also choose to direct their investments to a Global Diversified Fund.  *See id.* ¶ 202.

The FAC alleges that the Investment Committee breached its duty of prudence by adopting and maintaining an asset allocation model for the Intel TDFs and Intel GDFs that allocates a

United States District Court
Northern District of California

United States District Court
Northern District of California

1   significant proportion of those funds to Non-Traditional Assets, such as private equity and hedge

2   funds.  FAC ¶¶ 398, 399, 409–10.  Defendants argue that Plaintiffs have still failed to provide

3   meaningful benchmarks against which to examine the Intel TDFs and the Intel GDFs.  Mot. 5–12.[5]

4   Below, the Court addresses Plaintiffs' chosen benchmarks for the Intel TDFs then the Intel GDFs.

5                              i.   **Intel TDFs**

6          Plaintiffs attempt to cure the deficiencies from their first consolidated class action

7   complaint in their FAC by adding several paragraphs identifying common benchmarks for Intel

8   TDFs.  Plaintiffs note that "[c]ommon benchmarks include: (1) published indices such as the S&P

9   500; (2) peer groups such as the categories established by Morningstar, Inc., a leading provider of

10  investment data, and (3) specific peer alternatives within a given asset class."  FAC ¶ 136.

11         Plaintiffs argue that all of these "common benchmarks" are also "meaningful benchmarks"

12  against which to compare the performance of the Intel TDFs.  Specifically, Plaintiffs compare the

13  Intel TDFs to (1) the S&P 500, (2) the Intel TDFs' "peer group category" as defined by

14  Morningstar, Inc.,[6] and (3) "four TDF fund families," which are allegedly peer alternatives in the

15  Intel TDFs' asset class.

16         As to the "four TDF fund families, two of the "four TDF fund families" consist of

17  passively managed funds and two consist of actively managed funds.  *Id.*  Plaintiffs argue that

18  these four fund families are meaningful benchmarks to the Intel TDFs in part because "all TDFs

19  share common fundamental traits so it is fair to compare them to one another."  *Id.* ¶ 151.

20  Additionally, Plaintiffs argue that the four "TDF fund families" to which they compare the Intel

21  TDFs are appropriate benchmarks because "all four fund families are among the most widely-

22

23  [5] Defendants make several other arguments explaining why Plaintiffs' FAC does not properly state
    a claim.  The Court need not address these additional arguments because, as discussed in the
24  Court's 2021 Order, Plaintiffs cannot properly allege that a prudent fiduciary would have acted
    differently in like circumstances without "a sound basis for comparison—a meaningful
25  benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 833 (8th Cir. 2018).  Absent such
    allegations, Plaintiffs' allegations are insufficient so state a claim for breach of the duty of
26  prudence.
    [6] According to Plaintiffs, Morningstar, Inc. investment data "is a common resource used by
27  institutional investors and retirement plan fiduciaries."  FAC ¶ 137.

                                                          18
28  Case No. 19-CV-04618-LHK
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
    AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

recognized providers in the industry with strong reputations" such that "plan fiduciaries following reasonable and standard practice would have considered them in comparison to a specific fund under consideration or review."  *Id.*

However, Plaintiffs still fail to provide factual allegations explaining why their chosen benchmarks are "meaningful" benchmarks that have similar aims, risks, and rewards as the Intel TDFs.  Rather than explaining why the Intel TDFs have similar aims, risks, and rewards as Plaintiffs' chosen comparators, Plaintiffs only conclude that these comparators are "common." FAC ¶ 136.  In addition to the allegation that the S&P 500, the Morningstar "peer group category" and the four TDF fund families are "[c]ommon benchmarks," *id.*, Plaintiffs provide only generalizations or citations to generic TDF features.  For instance, Plaintiffs argue that "[c]omparing a given target date fund . . . to peer TDFs of the same vintage is standard and reasonable practice for several reasons related to their common goals and features," *id.* ¶ 141, but Plaintiffs only identify goals and features that are common to all TDFs.  *See id.* (listing the features as (1) being a long-term investment vehicle, (2) consisting of a combination of asset classes, (3) having a "glidepath" that reduces risk over time, and (4) being only moderately risky overall).  However, Plaintiffs acknowledge that TDFs can have differing "investment strategies, glide paths, and investment-related fees," FAC ¶ 150, and that determining an appropriate benchmark for a given fund "[d]epends largely on the stated investment strategy and the actual investments of the fund" because "sometimes the stated investment strategy does not match the actual fund investments," *Id.* ¶ 138.  Plaintiffs do not provide any information regarding the investment strategies, glide paths, and fees of any specific TDFs with the same target date as the Intel TDFs.  *Wehner*, 2021 WL 507599 at *8 (holding that a plaintiff's comparison of three TDF products, simply by virtue of each product being a TDF, was "insufficient to make . . . an 'apples-to-apples' comparison"). The argument that all TDFs are meaningful benchmarks cannot survive a motion to dismiss.

Moreover, Plaintiffs' allegation that peer TDFs of the same vintage (i.e., share the same

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

target date) are meaningful benchmarks is especially conclusory given that Plaintiffs' own FAC explains that "there are considerable differences among TDFs offered by different providers, even among TDFs with the same target date." FAC ¶ 150 (quoting Ex. 17).

In addition, Plaintiffs' argument that the Morningstar "peer group category" is a meaningful benchmark with which to compare the Intel TDFs ignores the fact that the Morningstar "peer group category" is an average of a large group of TDFs. Ex. 9. For example, Morningstar's peer group category for Intel's TDF with a target date of 2035 is an average of 224 funds with a target date of 2035. *Id.* Plaintiffs provide no information as to the aims, risks, or rewards of any individual fund within the 224 funds that constitute the peer group funds with a target date of 2035. *Id.*

Similarly, Morningstar's "peer group category" for Intel's TDF with a target date of 2015 is an average of the performance of 188 funds with a target date of 2015. Ex. 10. Here too, Plaintiffs do not allege what the aims risks, and rewards are for any individual fund within this aggregate of 188 funds. *Id.*

Moreover, for any Morningstar "peer group category," Plaintiffs do not allege that all the funds within that category have similar aims, risks, and rewards as the Intel TDFs. The TDFs in these categories could all have differing aims, risks, and rewards than the Intel TDFs. Courts have held that it is insufficient for an average to be a meaningful benchmark. *Davis v. Salesforce.com, Inc.*, 2021 WL 1428259, at *3 (N.D. Cal. 2021) (rejecting reliance on "median" or "average" fees because of potential differences within funds).

Plaintiffs also argue in their opposition brief that because Plaintiffs compare the Intel TDFs to the benchmarks designated by Intel itself, Plaintiffs have properly stated a claim. Opp. 5. Specifically, Plaintiffs state that because the Intel TDFs were benchmarked against the Morningstar "peer group category," the Morningstar "peer group category" is a meaningful benchmark. *Id.* Plaintiffs do identify case law that establishes that a plan's own benchmarks are plausibly meaningful benchmarks against which to compare funds. *See e.g., Terraza v. Safeway*

20

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1    *Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017) (finding that a plaintiff plausibly alleged a

2    breach of fiduciary duty when the investment options underperformed compared to their

3    benchmark).

4            However, as Defendants point out, the document on which Plaintiffs rely, which is

5    incorporated by reference into the FAC, unambiguously shows that the Intel TDFs are not

6    benchmarked against the Morningstar "peer group category" but against a customized benchmark.

7    *See* Exhibit 9 at 1, 2 (showing that the benchmark for the 2035 TDF is a "2035 Composite

8    Benchmark" and explaining that "[t]he benchmark for each target-date fund is a customized

9    benchmark that has the same asset allocation as the Fund's target asset allocation, and uses index

10   returns to represent the performance of the asset classes").  Plaintiffs do not allege that the Intel

11   TDFs performed worse than the customized benchmark.  Instead Plaintiffs rely on the Intel TDFs'

12   performance against the Morningstar "peer group category," which Intel did not designate as a

13   benchmark.  Thus, Plaintiffs do not compare the Intel TDFs to their own benchmarks.  FAC ¶ 183.

14           Plaintiffs also argue that the FAC properly explains why Morningstar "peer group

15   categories" are plausible benchmarks.  Opp. 6–7.  Plaintiffs note that Intel itself commissioned

16   fact sheets from Morningstar, Opp. 6, and that "[a]ll the funds within a given Morningstar

17   category share common attributes and the funds within a given category are a set of peer funds

18   within a given asset class," Opp. 7; *see* FAC ¶ 139.  Plaintiffs then conclude that because

19   Morningstar categorizes TDFs by "vintage year," TDFs of the same vintage year (or target date)

20   are comparable "in light of their common goals and features." Opp. 7.  However, as discussed

21   above, these Morningstar "peer group categories" are inappropriate benchmarks for the Intel TDFs

22   because the Morningstar "peer group categories" are an average of a large group of funds.

23           Additionally Plaintiffs argue that they have stated a meaningful benchmark because

24   "retirement plan fiduciaries commonly benchmark funds against specific, prominent funds" that

25   have the same target date as the TDFs.  FAC ¶ 172–173; Opp. 7.  Plaintiffs argue that because

26   they have identified 21 other TDFs in the Intel TDFs' asset class, Plaintiffs have provided a

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

21

1    meaningful benchmark against which to compare the Intel TDFs.  *Id.*  Plaintiffs' FAC fails

2    because, again, Plaintiffs have only alleged that the Intel TDFs and the 21 other TDFs share

3    characteristics common to all TDFs.  FAC ¶ 15.  Plaintiffs fail to make any factual allegations

4    about the aims, risks, and rewards of these 21 other funds.  Without factual allegations regarding

5    the characteristics of these funds, the Court cannot make an apples-to-apples comparison of the

6    Intel TDFs and the 21 other funds.

7         Courts have consistently held that conclusory allegations that funds "have 'the same

8    investment style' or 'materially similar characteristics' . . . are not sufficient to state a claim for

9    relief." *Davis*, 2020 WL 5893405, at *4.  Without more factual allegations about how and why the

10   "prominent funds" that Plaintiffs cite are similar to the Intel TDFs at issue in this case, Plaintiffs

11   fail to allege a meaningful benchmark to the Intel TDFs.

12        Because Plaintiffs do not provide any factual allegations that explain why the S&P 500, the

13   Intel TDFs' "peer group category" as defined by Morningstar, Inc., and four identified TDF fund

14   families" are apples-to-apples comparators rather than funds with different aims, risks, and

15   potential rewards, Plaintiffs have not sufficiently alleged that these comparators are meaningful

16   benchmarks to the Intel TDFs.  *See Davis v. Wash. Univ.*, 960 F.3d at 485; *Wehner*, 2021 WL

17   507599, at *8–9.

18            **ii.  Intel GDFs**

19        Plaintiffs attempt to cure the deficiencies in their first consolidated class action complaint

20   by identifying the following "meaningful benchmarks" for the Intel GDFs: (1) the "Morningstar

21   World Allocation Category" and (2) "a traditional blend of 60% equities and 40% bonds."  FAC

22   ¶ 143.

23        As to the Morningstar World Allocation Category, that category is merely an average of a

24   group of funds that invest in global stocks and bonds.  Moreover, the only explanation Plaintiffs

25   give for why the Intel GDFs are properly compared to the funds in the Morningstar World

26   Allocation Category is that both invest in global stocks and bonds.  *Id.* ¶ 143.  Plaintiffs do not

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

provide any information about the funds in the Morningstar World Allocation Category.  For example, Plaintiffs provide no information about the aims, risks, and rewards of any of the individual funds within the Morningstar World Allocation Category.  Plaintiffs do not allege that all funds within the Morningstar World Allocation Category have the same aims, risks, and rewards.  Plaintiffs only allege that both the Intel GDF and the funds in the Morningstar World Allocation Category invest in global stocks and bonds.  Courts have held that such allegations are not sufficient to survive a motion to dismiss.  *Davis v. Salesforce.com, Inc.*, 2021 WL 1428259, at *3 (rejecting reliance on "median" or "average" fees because of potential differences within funds); *Davis v. Wash. Univ.* 960 F.3d at 485 ("Different funds can "have different aims, different risks, and different rewards that cater to different investors.  Comparing apples and oranges is not a way to show that one is better or worse than the other.").

Moreover, even if the Morningstar World Allocation Category was a benchmark, the Intel GDFs outperformed 80% of the largest funds in the Morningstar World Allocation Category  in the 10-year period ending in December 2018, the most recent date in Plaintiffs' data.  FAC ¶ 184, tbl. 14.  The fact that the Intel GDFs outperformed 80% of the largest funds that Plaintiffs claim are benchmarks is yet another reason why Plaintiffs' FAC fails to state a claim for breach of the duty of prudence.

Plaintiffs also allege that it is appropriate to compare the Intel GDFs to "a traditional blend of 60% equities and 40% bonds" because it is the "default benchmark for static allocation funds like the Intel GDFs."  FAC ¶ 143 (internal quotation marks omitted).  The FAC does not identify any specific fund with this traditional blend of 60% equities and 40% bonds.  A hypothetical fund with a mix of 60% equities and 40% bonds simply does not allow the Court to make an apples-to-apples comparison with the Intel GDFs.

Plaintiffs also argue that the Intel GDFs failed to perform against their benchmarks as defined by Intel's own documents.  FAC ¶¶ 180–81.  Specifically, the FAC briefly states as an aside that the Morningstar fact sheet for the Intel GDFs lists two benchmarks: (1) a customized

United States District Court
Northern District of California

benchmark; and (2) the MCSI World Index.  FAC ¶ 178; Exhibit 6.  First, as to the customized benchmark, the FAC makes no allegations about the customized benchmark.  The FAC does not attempt to identify the aims, risks, and rewards.  Therefore, it cannot serve as a meaningful benchmark.  Second, as to the MCSI World Index. in the one table in which the Intel GDFs were compared to the MCSI World index, the Intel GDFs outperformed the MCSI World Index during the five-year period ending in December 2011.  *See id.*  Plaintiffs cannot state a claim for breach of the duty of prudence by comparing the Intel GDFs to a benchmark that the Intel GDFs outperformed over a five-year period.

In sum, Plaintiffs do not compare the Intel GDFs to their own benchmarks.  Moreover, when compared to two of Plaintiffs' proposed benchmarks, the Intel GDFs outperformed them over a five-year period ending in 2011 and a ten-year period ending in 2018.  Therefore, the facts alleged in the FAC and the documents incorporated by reference into the FAC demonstrate that Plaintiffs fail to identify meaningful benchmarks.

### d.  Plaintiffs' Additional Arguments

Plaintiffs assert that their FAC pleads meaningful benchmarks for the Intel TDFs and GDFs by presenting three additional arguments contesting Defendants' arguments regarding meaningful benchmarks.

First, Plaintiffs argue that it is sufficient to compare the Intel TDFs and GDFs to similarly sized contribution plans throughout the country because the size of the funds at issue goes to whether a "prudent man acting in a like capacity" would have conducted himself in the same way.  Opp. 7–8 (quoting 29 U.S.C. § 1104(a)(1)(B)).  Plaintiffs are correct that the fact that funds are similarly sized may support the argument that the plans may be meaningful benchmarks.  However, the argument that all plans with similarly sized contributions are meaningful benchmarks is again too conclusory to survive motion to dismiss.  Essentially, Plaintiffs' argument that similarly sized TDFs must be meaningful benchmarks is just another way of stating that all funds in the same category are meaningful benchmarks of one another, regardless of whether they

United States District Court
Northern District of California

1    have different aims, risks, and potential rewards.  *See Davis*, 960 F.3d at 485.  Courts in this

2    circuit have consistently held that such categorical allegations are insufficient to support that a

3    comparator is a "meaningful benchmark" to a challenged fund.  *Davis*, 2020 WL 5893405, at *4

4    (N.D. Cal. Oct. 5, 2020); *Wehner*, 2021 WL 507599, at *8–9.  Therefore, Plaintiffs' argument that

5    the TDFs of a similar size must be meaningful benchmarks to the Intel TDFs is insufficient to

6    support Plaintiffs' claim.

7        Second, Plaintiffs argue that the determination of the appropriate benchmark for a fund is

8    not a question properly resolved at the motion to dismiss stage.  Opp. 10.  For this proposition,

9    Plaintiffs cite an out-of-circuit district court case.  Opp. 10 (citing *In re MedStar ERISA Litig.*,

10   2021 WL 391701, at *6 (D. Md. Feb. 4, 2021)).  However, courts within this district have

11   consistently considered the question of whether a meaningful benchmark has been pled at the

12   motion to dismiss stage.  *See e.g.*, *Davis v. Salesforce.com*, 2020 WL 5893405, at *3–4 (granting

13   motion to dismiss because of failure to plead a meaningful benchmark); *Tobias v. NVIDIA Corp.*,

14   2021 WL 4148706, at *13 (N.D. Cal. Sept. 13, 2021) (granting motion to dismiss in part because

15   of plaintiffs' failure to plead a meaningful benchmark); *Wehner*, 2021 WL 2317098, at *8–9

16   (granting motion to dismiss based on plaintiffs' failure to plead a meaningful benchmark).

17   Moreover, this Court dismissed the first consolidated class action complaint because of a failure to

18   allege meaningful benchmarks.  ECF No. 109 at 16–18.

19       The Court concludes that a decision on whether a "meaningful benchmark" has been

20   pleaded is appropriate at this stage for the same reasons that the Eighth Circuit cited.  "A

21   complaint cannot simply make a bare allegation that costs are too high, or returns are too low,"

22   and an allegation that a fund is mismanaged must be fact-specific because "there is no one-size-

23   fits-all approach" to investment.  *Davis*, 960 F.3d at 484.  Without finding a *meaningful*

24   benchmark, the Court cannot evaluate if an allegation of a violation of the duty of prudence is

25   plausible because a plaintiff's comparison of "apples to oranges is not a way to show that one is

26   better or worse than the other."  *Id.* at 485.  Therefore, the Court reiterates that evaluation of

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1    meaningful benchmarks is appropriate at this stage because of the guidance of holdings of district

2    courts within this district.

3         Third, Plaintiffs assert that they need not compare the Intel TDFs and Intel GDFs to

4    meaningful benchmarks with similar characteristics because the instant case also alleges that the

5    Intel TDFs' and Intel GDFs' investment strategy itself is imprudent.  Opp. 9.  However, Plaintiffs'

6    FAC does not reflect Plaintiffs' assertion that their FAC challenges the overall investment

7    strategy, rather than simply the allocations chosen to implement that strategy.  In Plaintiffs'

8    opposition brief, Plaintiff cite only two paragraphs of their FAC.  In the first cited paragraph,

9    which is materially unchanged from Plaintiffs' first consolidated class action complaint, Plaintiffs

10   state that "in pursuing a risk-mitigation strategy, the Intel TDFs and Intel GDFs gave up the long-

11   term benefit of investing in equity, which delivers superior returns."  FAC ¶ 217.  In the second

12   cited paragraph, Plaintiffs state that the "Department of Labor counsels plan fiduciaries to

13   compare actively managed funds to passive or index funds," because "'there are considerable

14   differences among TDFs offered by different providers, even among TDFs with the same target

15   date.'"  FAC ¶ 150 (quoting U.S. Dep't of Labor, *Target Date Retirement Funds—Tips for ERISA*

16   *Fiduciaries* (Feb. 2013)).  In short, Plaintiffs argue that Defendants never should have pursued a

17   risk mitigation strategy at all and that Defendants should have been looking for ways to change

18   their risk mitigation strategy to a riskier strategy that could provide more returns for employees.

19        However, Plaintiffs' new theory fails to state a claim under current case law.  ERISA

20   fiduciaries are not required to adopt a riskier strategy simply because that strategy may increase

21   returns.  *See Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) ("ERISA does not

22   guarantee substantive benefits.");  *White v. Chevron Corp.*, 2017 WL 2352137, at *10 (N.D. Cal.

23   May 31, 2017), *aff'd*, 52 F. App'x 453 (9th Cir. 2017) ("A fiduciary may reasonably select an

24   investment alternative in view of its different risks and features, even if that investment option

25   turns out to yield less than another option.");  *St. Vincent*, 712 F.3d at 718 (stating that courts must

26   be careful to "not rely on the vantage point of hindsight" when assessing a fiduciary's prudence).

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1  Plaintiffs also do not cite a single case to support their new theory that a risk mitigation strategy

2  can be deemed imprudent under the law.

3           Therefore, because Plaintiffs do not support their new theory with case law, or with new

4  factual allegations in the FAC, Plaintiffs' new theory that Defendants' risk mitigation strategy was

5  imprudent cannot survive a motion to dismiss.  *Adams*, 355 F.3d at 1183 (holding that "conclusory

6  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

7           In sum, Plaintiffs' FAC fails to cure the deficiencies identified in the 2021 Order.

8  Plaintiffs still fail to identify a meaningful benchmark with which the Court can compare the

9  performance and fees of the Intel TDFs and Intel GDFs.  As the 2021 Order held, simply labeling

10  funds as comparable or as in the same category as the Intel TDFs and Intel GDFs is insufficient to

11  establish that those funds are meaningful benchmarks.  *See* ECF No. 117 at 16.  Absent such

12  allegations, Plaintiffs' allegations regarding the imprudence of Defendants are insufficient to state

13  a claim for breach of the duty of prudence.  Therefore, the Court GRANTS Defendants' motion to

14  dismiss regarding Plaintiffs' claims for breach of the duty of prudence.

15           The Court next addresses leave to amend.  Ninth Circuit case law holds that the "decision

16  of whether to grant leave to amend . . . remains within the discretion of the district court, which

17  may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the

18  movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

19  to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'"

20  *Leadsinger Inc. v. BMG Music Pub'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*,

21  371 U.S. 178, 182 (1962)).  Defendants' first motion to dismiss and the 2021 Order identified the

22  deficiencies of Plaintiffs' breach of the duty of prudence allegations.  *See* ECF No. 99 at 18–20;

23  ECF No. 109 at 16, 18, 23. The 2021 Order expressly warned Plaintiffs that "failure to cure the

24  deficiencies identified in [the] Order and in Defendants' motion to dismiss" would result in

25  dismissal of Plaintiffs' deficient claims with prejudice.  ECF No. 109 at 29.  Allowing Plaintiffs a

26  third attempt to identify a meaningful benchmark would be futile.  *Leadsinger*, 512 F.3d at 532.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs have already had two chances to amend their pleadings, and in each one, the Plaintiffs

2    have failed to identify a meaningful benchmark against which to compare the Intel TDFs and Intel

3    GDFs.  Additionally, allowing Plaintiffs to file a fourth complaint and requiring Defendants to file

4    a third motion to dismiss would cause undue delay and prejudice to Defendants.  *Id.*  Accordingly,

5    Defendants' motion to dismiss Plaintiffs' breach of the duty of prudence claim is granted with

6    prejudice.

7           **2.  Breach of the Duty of Loyalty**

8           Plaintiffs second claim alleges that the Investment Committee breached its duty of loyalty

9    under ERISA.  FAC ¶¶ 404–14; Opp. 4–25.  ERISA requires that plan fiduciaries, like

10   Defendants, act "solely in the interest of the participants and beneficiaries," and "for the exclusive

11   purpose of . . . providing benefits to participants and their beneficiaries."  29 U.S.C.

12   § 1104(a)(1)(A).  As such, plan fiduciaries must act "with an eye single to the interests of the

13   participants and fiduciaries."  *White*, 2016 WL 4502808, at *4 (quoting *Donovan v. Bierwirth*, 680

14   F.2d 263, 271 (2d Cir. 1982)).

15          Plaintiffs assert that Defendants breached the duty of loyalty both because of Defendants'

16   initial choice of asset allocation in 2011, FAC ¶ 409, and because of Defendants' choice to

17   maintain the asset allocation in the Intel Funds after 2011, *id.* ¶ 410.  Defendants argue that

18   Plaintiffs failed to plausibly allege that Defendants acted in Defendants' own self interest in

19   investing in Non-Traditional Assets and in maintaining and monitoring the Intel Funds.  Mot. 20–

20   26.

21          In the 2021 Order, the Court held that Plaintiffs must provide specific factual allegations to

22   support their claim that the Investment Committee's investments in private equity benefitted Intel

23   Capital.  ECF No. 109 at 24–25.  The Court also explained that allegations that support at most the

24   potential of a conflict of interest are not sufficient to state a claim for breach of the duty of loyalty.

25   *Id.* at 25 (citing *Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018) (per curiam) (noting that the

26   "potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

disloyalty").  In order to allege that the Investment Committee breached the duty of loyalty, Plaintiffs must allege that the Investment Committee's decisions were made because of self-dealing.  *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1069 (N.D. Cal. 2017) (noting that the duty of loyalty prevents fiduciaries from "engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests") (quoting Restatement (Third) of Trusts § 78 (2007)).

The FAC attempts to bolster Plaintiffs' allegations of self-dealing by Defendants. Plaintiffs' FAC continues to allege that Intel Capital, an Intel subsidiary, has "partnered with investment companies such as hedge fund and private equity investors to co-invest in and secure sequential funding for third-party startups."  Opp. 21; FAC ¶¶ 306–07.  Plaintiffs' FAC bolsters this new theory with three sets of new allegations.  The Court addresses each of Plaintiffs' three new theories in turn.

First, Plaintiffs argue that Intel Capital invested in privately held companies that benefitted Intel's business and that Intel used the Intel Funds to incentivize hedge funds to give follow-up funding to these beneficial privately held companies.  *Id.*; Opp. 21.  Plaintiffs argue that "[o]btaining sequential funding from hedge funds and private equity" benefits Intel because "additional investment by hedge funds and private equity ensures that the companies in which Intel Capital has invested have sufficient funding to grow," "Intel Capital reduces its own risk by having an outside firm invest in these companies," and "when hedge funds or private equity invest in the investment companies, that investment increases the value of Intel Capital's investment." FAC ¶ 308.

Second, Plaintiffs allege that Intel and Intel Capital invested in the private equity of companies that complemented Intel's business, and "used hedge funds to come in and invest in those same companies" when those same companies sought a second round of funding.  Opp. 21; FAC ¶¶ 312–15.  Plaintiffs state that Intel and Intel Capital benefitted from this alleged collaboration with hedge funds (1) because Intel's investments gained funding without Intel

29

United States District Court
Northern District of California

investing, which increased the value of the companies in which Intel invested, and (2) because of the increase in the value of the companies in which Intel invested, Intel Capital had a basis to continue investing in those same companies.  Opp. 21.

Third, Plaintiffs allege that Intel and Intel Capital failed to consider the interests of employees with low pay grades while conducting the alleged collaboration with the hedge funds. Opp. 21–25; FAC ¶¶ 316–321.  Plaintiffs' theory centers on the Intel Minimum Pension Plan, which provides a "floor" of benefits to plan participants, meaning participants will receive at least what they are entitled to under the Minimum Pension Plan.  *See* FAC ¶¶ 54, 317; Opp. 22 & n.18. Those participants who also receive benefits under the Intel Retirement Contribution Plan will receive those benefits only if those benefits exceed the value of the minimum pension plan.  *Id.* However, if the Intel Retirement Contribution Plan's benefit does not exceed the Minimum Pension Plan, the beneficiaries will receive the "minimum pension" benefit, which is determined by the beneficiaries' paygrade.  FAC ¶¶ 317–18; Opp. 22.  One of the Intel GDFs is the default investment option for the Intel Retirement Contribution Plan.  FAC ¶ 98.  According to Plaintiffs, employees with higher pay grades usually received benefits under the Minimum Pension Plan no matter the circumstances, but employees with lower paygrades could have earned under the Intel Retirement Contribution Plan more if that Intel GDF had better performance and lower fees.

As to Plaintiffs' paygrades theory, the FAC also alleges that, in a 2015 meeting, a "confidential witness" raised the issue of the difference in interests in the Intel Retirement Contribution Plan between higher-paid and lower-paid employees with Ravi Jacobs, a member of the Investment Committee, and Stuart Odell, a member of the Administrative Committee.  FAC ¶¶ 23, 34, 315.  At the meeting, the confidential witness "raised the issue that employees in lower pay grades including [the confidential witness] were adversely affected by the high fees of the Intel GDF and its poor performance."  FAC ¶ 319.  Jacobs allegedly told the "confidential witness" that he "should not be concerned because his pay grade was such that he would only get the floor minimum pension benefit under the [Minimum Pension] Plan."  *Id.*  In other words,

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1    Jacobs allegedly told the confidential witness that any problems with the Intel GDF would not

2    affect the confidential witness.  Plaintiffs argue that this interaction shows that Jacobs and Odell,

3    who had higher pay grades, "had no personal interest in lowering the fees for the Intel GDF or

4    improving the performance of the Intel GDF or the Retirement Contribution Plans."  *Id.* ¶ 320.

5         Although Plaintiffs have added more allegations since their first consolidated class action

6    complaint, Plaintiffs have still failed to plausibly allege that the Investment Committee acted in

7    order to aid Intel Capital in its venture capital investments at the expense of investors.  The Court

8    identifies two main deficiencies.  First, Plaintiffs have again failed to cure the deficiencies in the

9    first consolidated class action complaint related to the connection between (1) the Investment

10   Committees' investment in private equity and hedge funds and (2) the actions that those private

11   equity and hedge funds took after receiving the investments.  Second, Plaintiffs' argument

12   regarding the Minimum Pension Benefit Plan is implausible based on the facts alleged in the FAC.

13   The Court addresses each deficiency in turn.

14        First, Plaintiffs have again failed to provide any factual allegations to support their claim

15   that the aim of the Investment Committee's investment in private equity and hedge funds was to

16   aid Intel Capital and its venture capital investments.  Plaintiffs only allege that such investments

17   would stand to benefit Intel if the private equity and hedge funds acted in a way that benefitted

18   Intel.  As the Court previously stated in the 2021 Order, "[t]he mere fact that Intel Capital invested

19   in a tiny percentage of the same companies that also received investments from private equity

20   funds that the Intel Funds invested in is not sufficient to plausibly allege a real conflict of interest,

21   rather than the mere potential for a conflict of interest."  ECF No. 109 at 23; *Kopp*, 894 F.3d at

22   222 (The "potential for conflict without more, is not synonymous with a plausible claim of

23   fiduciary disloyalty").  For example, Plaintiffs never allege that the Investment Committee had

24   any influence over any investment firm's decision to invest in one of the startups in which Intel

25   invested.  As the Court has previously stated, Plaintiffs must provide factual allegations to

26   "support the claim that the aim of the Investment Committee's investment in the various private

27

28
     Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

equity funds was to aid Intel Capital in its venture capital investments."  ECF No. 109 at 23.

Plaintiffs' FAC merely shows that Intel Capital and some investment companies happened to

invest in similar startups.  Such allegations, standing alone, are not sufficient to plausibly support

Plaintiffs' claim that the Investment Committee acted disloyally in its fiduciary duties.

Second, Plaintiffs' allegation that the Minimum Pension Benefit Plan insulates higher-paid

employees from the effects of a poorer performing Intel GDF is not plausible even based on the

facts of the FAC.  The FAC alleges that at least some of the individuals on the Investment

Committee are Intel employees.  FAC ¶¶ 23, 25.  The FAC also alleges that the individuals on the

Investment Committee have higher paygrades than Plaintiffs.  FAC ¶ 318.  However, even the

higher-paid employees on the Investment Committee could receive greater benefits if the

Retirement Contribution Plan and the Intel GDF outperformed the Minimum Pension Benefit

Plan.  *See* FAC ¶ 317 (suggesting that all employees could receive benefits under the Intel

Retirement Contribution Plan if those benefits exceeded the value of the benefits under the

Minimum Pension Benefit Plan).  Simply because higher-paid employees are more likely to

receive benefits under the Minimum Pension Benefit Plan does not mean those employees are not

also incentivized to increase their returns by improving the performance of the Intel GDF and the

Retirement Contribution Plan, which would directly benefit Plaintiffs.

Plaintiffs cite several cases to support their theory that the conclusory allegations in the

FAC are sufficient to state a claim that the Investment Committee breached its duty of loyalty.

Plaintiffs' cases are inapposite.  In their opposition brief, Plaintiffs cite *Braden v. Wal-Mart

Stores, Inc.*, which found that a plaintiff's complaint was sufficient when the plaintiff alleged that

a plan included poorly performing funds in order to "[b]enefit the trustee at the expense of the

participants."  588 F.3d 585, 596 (8th Cir. 2009).  However, *Braden* included much stronger facts

than Plaintiffs included in the FAC.  For example, the plaintiff in *Braden* alleged that the

defendant received "kickbacks" in exchange for inclusion in the plan at issue.  *Id.* at 600.

Moreover, Plaintiffs cannot reasonably say that a poorly performing Intel GDF is in the

32

1    Investment Committee's favor when the employees on that Committee would receive more in

2    benefits if the Intel GDF performed well.

3         Plaintiff also cites *Cryer v. Franklin Templeton Resources, Inc.*, for the proposition that the

4    allegation that investment decisions made to allow Defendant to collect more money in investment

5    fees was sufficient to support an allegation of breach of the duty of loyalty.  2017 WL 818788, at

6    *4 (N.D. Cal. Jan. 17, 2017).  However, unlike in *Cryer*, Plaintiffs do not allege that the

7    Investment Committee received a direct benefit from the investment of the Intel Funds into private

8    equity and hedge funds.  Plaintiffs only allege that Intel Capital would be indirectly benefitted if

9    the hedge funds helped build the value of the venture capital companies in which Intel Capital

10   invested.

11        Although Plaintiffs added more paragraphs to their FAC, the allegations in the FAC are

12   much the same as in the first consolidated class action complaint.  Plaintiffs still fail to provide

13   any factual allegations to support Plaintiffs' claim that Defendants engaged in self-dealing.

14   Plaintiffs only plead factual allegations that, at most, support a potential conflict of interest, not a

15   real conflict.  As the Court has previously held, the allegation that Defendants may have a

16   *potential* conflict of interest is not sufficient to state a claim for breach of the duty of loyalty.  ECF

17   No. 119 at 25; *Kopp*, 894 F.3d at 222 (holding that a plaintiff's request "to infer that the

18   [d]efendants acted with inappropriate motivations because they stood to gain financially" from a

19   company's success, did not, in and of itself, support a claim of fiduciary disloyalty).  In sum,

20   Plaintiffs have again failed to allege a plausible conflict of interest that would support Plaintiffs'

21   claim for breach of the duty of loyalty.  Therefore, the Court GRANTS Defendants' motion to

22   dismiss regarding Plaintiffs' claims for breach of the duty of loyalty.

23        The Court next addresses leave to amend.  Defendants' first motion to dismiss and the

24   2021 Order identified the deficiencies in Plaintiffs' breach of the duty of loyalty allegations.  The

25   2021 Order expressly informed Plaintiffs that "failure to cure the deficiencies identified in [the]

26   Order and in Defendants' motion to dismiss" would result in dismissal of Plaintiffs' deficient

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

33

United States District Court
Northern District of California

1    claims with prejudice.  ECF No. 117 at 29.  Allowing Plaintiffs a third attempt to identify allege a

2    conflict of interest would be futile.  *Leadsinger*, 512 F.3d at 532.  Plaintiffs have already had two

3    chances to amend their pleadings, and in each one Plaintiffs have failed to allege facts that support

4    a plausible finding of a real conflict of interest, rather than the mere potential for a conflict of

5    interest.  Allowing Plaintiffs to file a fourth complaint and requiring Defendants to file a third

6    motion to dismiss would cause undue delay and prejudice to Defendants.  *Id.*  Because Plaintiffs

7    have failed to cure the deficiencies identified by the Court, Defendants' motion to dismiss

8    Plaintiffs' breach of the duty of loyalty claim is granted with prejudice.

9        **B.  Counts III and IV: Breach of the Duty of Prudence by the Administrative Committee**

10            Defendants argue that Plaintiffs lack Article III standing to bring Counts III and IV.  In

11   Count III, Plaintiffs allege that the Administrative Committee violated ERISA §§ 404(a)(1)(A)

12   and 404(a)(1)(B) by failing to make adequate and accurate disclosures to Plaintiffs regarding the

13   Intel Plans.  FAC ¶¶ 415–432.  In Count IV, Plaintiffs allege that the Administrative Committee

14   violated ERISA § 102(a) and 29 U.S.C. § 1022(a) by failing to prepare Summary Plan

15   Descriptions ("SPDs") that adequately disclosed and explained the risks associated with the Intel

16   Funds' investments in hedge funds and private equity.  *Id.* ¶¶ 433–40.

17            Defendants argue that Plaintiffs lack standing to bring Counts III and IV because Plaintiffs

18   have failed to allege an injury in fact that is traceable to Defendants' conduct as alleged in the

19   FAC.  Mot. 26.  Just as Defendants argued in their first motion to dismiss, Defendants again argue

20   that Plaintiffs "still do not allege that Plaintiffs read or relied upon the allegedly defective

21   documents." *Id.* (internal quotation marks omitted).  In response, Plaintiffs do not contend that

22   they relied on the allegedly defective documents or that they cured the deficiencies the Court

23   identified in the 2021 Order.  *See* Opp. 25–27.  Instead, Plaintiffs argue that they are not required

24   to plead that they read or relied upon the disclosures in the Intel Plans or the Summary Plan

25   Descriptions and thus have standing to sue.  *Id.*

26

27

28   Case No. 19-CV-04618-LHK
     ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
     AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

The Court again finds that Plaintiffs' argument lacks merit.[7]  Under Ninth Circuit case law, Plaintiffs are required to show how they have been injured by Defendants' allegedly deficient documents.  As the Court explained in 2021 Order, simply because a plaintiff has statutory standing under ERISA does not mean that the plaintiff has Article III standing, which requires that the plaintiff show injury in fact.  *See* ECF No. 109 at 27 (citing *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020)).  In essence, by arguing that Plaintiffs need not plead that they read or relied upon the disclosures in the Intel Plans, Plaintiffs are arguing that they need not plead that they were injured by those disclosures or that those disclosures caused their injury.  That argument does not hold water under United States Supreme Court case law.  *Thole*, 140 S. Ct. at 1620; *see also Spokeo v. Robins*, 578 U.S. 330, 341 (2016) ("Congress's role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.").

Plaintiffs cite several cases to contest the Court's conclusion, but all are inapposite.  First, Plaintiffs cite *Magadia v. Wal-Mart Associates, Inc.*, for the proposition that "[t]he omission of statutorily required information" suffices for Article III standing.  *Magadia*, 999 F.3d 668, 678 (9th Cir. 2021).  However, *Magadia* is inapposite.  In *Magadia*, the Ninth Circuit held that the plaintiff in that case needed to identify an injury traceable to the conduct alleged in his complaint.  *Id.* at 679.  Specifically, the Ninth Circuit explained that "[e]ven when a statute 'has afforded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.'"  *Id.* (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016)).  More specifically, allegations of procedural violations of an informational entitlement cannot by themselves keep a claim in court.  *Id.*  "The plaintiff must further 'allege that the information had

---

[7] Because the Court decides that Plaintiffs lack standing to bring Counts III and IV, the Court need not reach Defendants' law of the case argument.  *See* Mot. 27.

Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1  some relevance to her.'"  *Id.* (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th

2  Cir. 2019)).

3          The Ninth Circuit's guidance in *Magadia*, therefore, still supports the Court's finding that

4  Plaintiffs here lack standing.  It is not enough to allege procedural violations of an informational

5  entitlement.  Plaintiffs needed to provide some factual allegation to show that they faced a risk of

6  harm because of the procedural violations of that informational entitlement.  Here, Plaintiffs have,

7  for the second time, failed to allege that they relied at all upon the disclosures and summary plan

8  descriptions provided by the Administrative Committee.  It is therefore difficult to see how the

9  information contained or not contained in the disclosures and summary plan descriptions could

10  have had relevance to Plaintiffs' purported injury in this case.

11          Second, Plaintiffs cite *CIGNA Corp. v. Amara* for the proposition that plaintiffs need not

12  show that they read and relied on defective disclosures and summary plan descriptions.  Opp. 26

13  (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011)).  Specifically, in *CIGNA*, the United

14  States Supreme Court stated that, in that case, it was "not difficult to imagine how the failure to

15  provide proper summary information, in violation of the statute, injured employees even if they

16  did not themselves act in reliance on summary documents—which they might not themselves have

17  seen—for they may have thought fellow employees, or informal workplace discussion, would let

18  them know if, say, plan changes would likely prove harmful."  *CIGNA*, 563 U.S. at 444.

19  Unfortunately for Plaintiffs, *CIGNA* does not address Article III standing.  Rather, *CIGNA*

20  addresses only the requirement of "detrimental reliance" as it relates to statutory standing.  *Id.*  As

21  the Court has already discussed above, Plaintiffs must satisfy both statutory standing and Article

22  III standing in order to keep their claim in court.  *See Thole*, 140 S. Ct. at 1620.  The issue with

23  Plaintiffs' FAC is that they have not satisfied Article III standing.  A case on statutory standing

24  does not contradict the Court's finding and Defendants' argument that Plaintiffs failed to allege an

25  injury in fact caused by Defendants' conduct.

26          Plaintiffs' other cited authorities are no more helpful than *Magadia* and *CIGNA*.  Plaintiff

27

28
Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1   cites *Hurtado v. Rainbow Disposal Co., Inc.*, for the proposition that it is impossible to

2   demonstrate reliance on Defendants' omissions. *Hurtado*, 2019 WL 1771797, at *7 (C.D. Cal.

3   Apr. 22, 2019). However, Plaintiffs take *Hurtado* out of context. *Hurtado* actually discussed the

4   presumption of classwide reliance when it would be impossible to offer "affirmative proof of

5   classwide nondisclosure" as class action plaintiffs are attempting to prove commonality. *Id.* The

6   Central District of California's language on commonality is not relevant to whether or not

7   Plaintiffs' pleaded an injury in fact in their FAC.

8          Finally, Plaintiffs attempt to distinguish *Thole*, 140, S. Ct. at 1619–20, which the 2021

9   Order cited. The 2021 Order relied on the United States Supreme Court's holding in *Thole*'s that

10  "statutory standing under ERISA does not absolve a plaintiff of the requirement to demonstrate

11  Article III standing." *See Thole*, 140 S. Ct. at 1620. Plaintiffs now argue that *Thole* is inapposite

12  because that case expressly stated that it did not concern "[t]he omission of statutorily required

13  information." *Id.* at 1621 n.1. However, that footnote followed the United States Supreme

14  Court's statement that plaintiffs must plausibly allege a "concrete" monetary injury. *Id.* However,

15  the problem with Plaintiffs' FAC is not that Plaintiffs failed to allege a concrete monetary injury.

16  Instead, the problem with Plaintiffs' FAC is that Plaintiffs failed to allege that the actions taken by

17  the Administrative Committee injured them at all. Despite the United States Supreme Court's

18  instruction that nonmonetary injuries may still suffice to adequately plead informational injuries,

19  *Thole* still stands for the proposition that Article III standing is required in all cases and does not

20  vary by cause of action. *Id.* at 1621.

21         Because Plaintiffs have again failed to allege that they relied in any way upon the allegedly

22  defective documents, Plaintiffs have again failed to allege an injury in fact that is traceable to

23  Defendants' conduct. Therefore, Plaintiffs lack Article III standing to bring Counts III and IV.

24  Because the Plaintiffs lack Article III standing to bring Counts III and IV, Defendants' motion to

25  dismiss Claims III and IV is GRANTED.

26         The Court next addresses leave to amend. Defendants' first motion to dismiss and the

27

28  Case No. 19-CV-04618-LHK
    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
    AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1  2021 Order identified the deficiencies in Plaintiffs' allegations regarding the Administrative

2  Committee Defendants and their allegedly deficient disclosures.  The 2021 Order expressly

3  warned Plaintiffs that "failure to cure the deficiencies identified in [its] Order and in Defendants'

4  motion to dismiss" would result in dismissal of Plaintiffs' deficient claims with prejudice.  ECF

5  No. 117 at 29.  Plaintiffs do not even attempt to identify an injury in fact suffered from

6  Defendants' allegedly deficient disclosures.  Therefore, any attempt to amend Plaintiffs' pleadings

7  would be futile.  *Leadsinger*, 512 F.3d at 532.  Allowing Plaintiffs to file a fourth complaint and

8  requiring Defendants to file a third motion to dismiss would cause undue delay and prejudice to

9  Defendants.  *Id.*  Because Plaintiffs have failed to cure the deficiencies identified by the Court,

10  Defendants' motion to dismiss Plaintiffs' Counts III and IV of Plaintiffs' FAC is granted with

11  prejudice.

12      **C.  Counts V and VI: Failure to Monitor and Co-Fiduciary Liability**

13        Defendants next argue that Plaintiffs' derivative claims necessarily fail because Plaintiffs

14  have not plausibly alleged a primary violation of ERISA.  Mot. 29.  The Court again agrees.

15        Plaintiffs allege two derivative claims.  First, Plaintiffs allege in Count V that the Intel

16  Finance Committee and the Intel Chief Financial Officers, who are tasked with appointing and

17  monitoring the members of the Investment Committee and the Administrative Committee,

18  breached their fiduciary duty under ERISA § 404(a) by failing to monitor those appointees and

19  failing to remove them.  FAC ¶¶ 441–49.  Second, Plaintiffs allege that all Defendants are subject

20  to "co-fiduciary liability" under ERISA § 405 for violations of each Defendant as to Counts I, II,

21  III, and IV.  *Id.* ¶¶ 450–66.

22        Both derivative claims fail because Plaintiffs have failed to state an underlying ERISA

23  violation.  Therefore, Plaintiffs have failed to state a claim for failure to monitor and co-fiduciary

24  liability.  *See, e.g.*, *In re HP ERISA Litig.*, 2014 WL 1339645, at *8 (N.D. Cal. April 2, 2014)

25  (dismissing claims for failure to monitor and knowing participation in co-fiduciaries' breaches of

26  duty because these claims were derivative of the claims for breach of the duties of prudence and

27

28  Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

United States District Court
Northern District of California

1  disclosure); *Romero*, 2013 WL 5692324, at *5 (co-fiduciary claims "necessarily depend[] on at

2  least one underlying breach").  Therefore, Defendant's motion to dismiss Counts V and VI of the

3  Plaintiffs' FAC is GRANTED.

4       The Court next addresses leave to amend.  Defendants' first motion to dismiss and the

5  2021 Order identified the deficiencies in Plaintiffs' allegations regarding the derivative claims.

6  The 2021 Order expressly warned Plaintiffs that "failure to cure the deficiencies identified in [the]

7  Order and in Defendants' motion to dismiss" would result in dismissal of Plaintiffs' deficient

8  claims with prejudice.  ECF No. 117 at 29.  Without allegations supporting underlying ERISA

9  violations, Plaintiffs cannot allege derivative ERISA violations.  Therefore, any attempt to amend

10  Plaintiffs' fifth and sixth claims would be futile.  *Leadsinger*, 512 F.3d at 532.  Allowing Plaintiffs

11  to file a fourth complaint and requiring Defendants to file a third motion to dismiss would cause

12  undue delay and prejudice to Defendants.  *Id.*  Because Plaintiffs have failed to cure the

13  deficiencies identified by the Court, Defendants' motion to dismiss Plaintiffs' Counts V and VI of

14  Plaintiffs' FAC is granted with prejudice.

15  **IV.    CONCLUSION**

16       For the foregoing reasons, Defendants' motion to dismiss Counts I–VI of Plaintiffs' First

17  Amended Consolidated Class Action Complaint is GRANTED with prejudice.

18       Defendants' motion to dismiss did not challenge Count VII of Plaintiffs' First Amended

19  Consolidated Class Action Complaint, which alleges that the Administrate Committee failed to

20  provide documents upon request to Anderson in violation of ERISA § 104(b)(4), 29 U.S.C.

21  § 1024(B)(4) and 29 C.F.R. § 2550.404a-5.  Thus, that cause of action remains in the case.

22  **IT IS SO ORDERED.**

23  Dated: January 8, 2022

24                             *Lucy H. Koh*

25                          LUCY H. KOH
                        United States Circuit Judge*

26

27                  
  * Sitting by designation on the United States District Court for the Northern District of California.

28  Case No. 19-CV-04618-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS I–VI OF PLAINTIFFS' FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT